## CHARLESTON

WILLIAMSON & CO. *v.* NIGH *et al.*

Submitted January 16, 1906.    Decided January 30, 1906.

1. DECLARATION—*Plea—Affidavit.*

   Where the plaintiff has filed with his declaration the affidavit provided for by section 46, chapter 125, Code, no plea shall be filed unless the defendant file with it the affidavit required by that section.    But where, in such case, a plea, not accompanied by such affidavit, is filed without objection, and the case proceeds to trial, the provision of the statute requiring such affidavit will be treated as having been waived.    (p. 631.)

2. PLEA—*Similiter.*

   Where a plea concludes to the country, and the formal addition of the *similiter* is omitted, the parties may proceed to trial as though issue had been formally joined.    (p. 631.)

3. OFFICE JUDGMENT—*Order.*

   Pleading to issue will operate to set aside an office judgment, and no formal entry setting such judgment aside is required.    (p. 632.)

4. PARTNERSHIP.

   A partnership is a contract relation between two or more competent persons who have combined their money, effects, labor and skill, or some or all of them, in a lawful joint enterprise, or business, for the purpose of joint profit.    (p. 634.)

5. PARTNERSHIP—*Limitation.*

   A partnership may be formed for the purpose of dealing in timber generally, or it may be limited to a speculation upon

a single venture, being, like any other contract of partnership, an agreement to share in the profit and loss of a certain business transaction. (p. 635.)

6. EVIDENCE—*Verdict.*
    A motion to exclude all the plaintiff's evidence and direct a verdict for the defendant should be sustained when the plaintiff's evidence does not, *prima facie*, entitle him to recover. But otherwise if a *prima facie* case is made. (p 632.)

Error to Circuit Court, Mingo County.

Action by Hi Williamson & Co. against S. H. Nigh and others. The court directed a verdict for defendants, and plaintiffs bring error.

*Reversed.*

C. H. JONES, for plaintiffs in error.

HOLT & DUNCAN, for defendants in error.

SANDERS, JUDGE:

This is an action of *assumpsit*, brought in the circuit court of Mingo county against the defendants, S. H. Nigh and T. F. Duncan, upon an account assigned to the plaintiffs by Varney, Williamson & Co. At the trial, after the plaintiffs had introduced their evidence, the court, upon motion of the defendants, excluded it from the jury and directed a verdict for the defendants, to which judgment a writ of error and *supersedeas* was allowed by this Court.

The affidavit provided for by section 46, chapter 125, Code, was filed with the plaintiffs' declaration, and the defendant, S. H. Nigh, appeared and filed his plea of *non-assumpsit*, which, the plaintiffs claim, was not accompanied by the affidavit required by said section 46, and assign this as error. The defendants, however, claim that the required affidavit did accompany the plea—that the affidavit and plea were both prepared upon the same paper, and filed at the same time. We find the affidavit copied in the record immediately following the plea, and it probably was filed along with the plea, but the record fails to so show, and it is by this that we must be guided. Therefore, as the order shows the filing of the plea, and it nowhere appears that the affidavit was filed, we must conclude that it was not done. Where the affidavit provided by section 46, chap-

ter 125, Code, is filed with the declaration, no plea shall be filed in the case, either at rules or in court, unless the defendant file with it the affidavit required by that section. This statute, obviously was passed for the benefit of the plaintiff, and while the affidavit is required, still, this provision is such as can be waived by him, and where a plea is tendered, unaccompanied by such affidavit, and he makes no objection to the filing, but proceeds to trial, as was done in this case, the provision of the statute requiring the affidavit will be considered as having been waived. It was held in the case of *Lewis' Admr.* v. *Hicks*, 96 Va. 91, that where the plaintiff joins issue after defendant has pleaded limitations without verifying his plea, he waives the statutory provision requiring defendant to verify his plea, if plaintiff brings suit upon a verified account. Judge Keith, in delivering the opinion of the court in this case, says: "The statute, having provided that plaintiff might verify his account by affidavit, and have his case placed upon the office judgment docket, requires of the defendant that his defense shall be presented by a plea verified by an act of equal solemnity, and that it shall not be received unless accompanied by an affidavit; but this requirement of the statute was manifestly imposed for the benefit of the plaintiff, and may be waived by him either expressly or by implication, or he may by his conduct be estopped to take advantage of it."

It is assigned as error that the case was tried without an issue. This assignment is without merit. The defendant, Nigh, filed his plea of *non-assumpsit* in writing, which is good in form, and to which there was no objection. The plaintiffs complain that the plea does not conclude to the country, and that they replied generally thereto, instead of adding the *similiter*. The order shows the filing of the defendant's plea of *non-assumpsit*, which does conclude to the country, but instead of adding the *similiter*, makes the plaintiffs reply generally. The plea of *non-assumpsit* concludes to the country, and when filed it tenders an issue in which the plaintiff is compelled to join, and the plaintiff has the right to proceed to trial without the addition of the *similiter*. "When the plaintiff takes issue on the defendant's pleading, or traverses the same, or demurs, so that the

defendant is not let in to allege any new matter, the plaintiff may proceed as if there were a *similiter* or joinder in demurrer." Section 25, chapter 125, Code. And by section 3, chapter 134, Code, it is provided that no judgment shall be reversed for the want of a *similiter*, or any misjoinder of issue. Hogg's Pleading and Forms, page 224, speaking on this subject, says: "If, however, a plea conclude to the country, as *non-assumpsit* or payment, the plaintiff may proceed to trial without the formal addition of the *similiter*, as though issue had been formally joined." Long ago this matter has been specifically decided by this Court. In *First National Bank of Wellsburg* v. *Kimberlands*, 16 W. Va. 555, JUDGE GREEN, in delivering the opinion of the Court, uses this language: "In the present case the verdict of the jury was responsive to all the issues, being a general verdict for the defendants. I say responsive to all the issues, for though no formal issues were taken on the pleas of *non-assumpsit* and payment, yet, as both these pleas properly conclude to the country, (see *Douglass* v. *The Central Land Co.*, 12 W. Va. 512), the plaintiff had a right without the formal addition of *similiter*, to proceed to trial on them as though issues had been formally joined upon them. * * * But it is otherwise if the plea concludes with a verification." *B. & O. R. R. Co.* v. *Faulkner*, 4 W. Va. 180; *Brewer* v. *Tarpley*, 1 Wash. 363.

Complaint is made that the court erred in directing a trial without setting aside formally the office judgment. The filing of the plea of *non-assumpsit* operated to set aside the office judgment, and no formal action to that effect is necessary. As we have seen, the plea was not such as entitled the defendants to have the office judgment set aside, if it had been objected to. But no objection being made, this provision of the statute was waived, and the plea, when filed, served to set aside the office judgment, the same as if the required affidavit had accompanied it.

The action of the court in sustaining the motion of the defendants to exclude the plaintiffs' evidence and direct a verdict for the defendant, is assigned as error. "On a motion to exclude all the plaintiff's evidence and direct a verdict for the defendant, the court should be guided by what its action would be if the case were submitted to the jury,

and they should find a verdict in favor of the plaintiff upon such evidence. If it would be the duty of the court to set aside the verdict of the jury because without sufficient evidence, then the court should sustain the motion to exclude, and instruct the jury to find for the defendant. But if, on the other hand, the evidence is such that, under the law, the court should refuse to set aside the verdict, the motion to exclude the evidence should be overruled." *Cobb* v. *Glenn Boom & Lumber Co.*, 57 W. Va. 49, (49 S. E. R. 1005.)

This assignment involves a consideration of the evidence, and it will, therefore, be necessary to review briefly the facts. In 1899, the defendant, T. F. Duncan, entered into a contract with J. M. and J. H. Fraley, by which they agreed to sell and deliver on Big Creek, in Pike county, Kentucky, to Duncan, a certain lot of oak logs. Shortly after, or about the time, of this contract, Duncan entered into a contract with the defendant, Nigh, by which Duncan was to have the management, and do all the work in looking after the logs, and delivering them at Catlettsburg, Ky., and Nigh was to provide the money to pay for them, and they were to share equally in the profits and losses resulting from the transaction. The logs were delivered according to contract, and were paid for by Duncan, with money furnished by Nigh, except a balance of $468.12, the amount of the plaintiffs' claim, for which the order hereinafter referred to was given.

J. M. and J. H. Fraley, while engaged in getting out and delivering these logs, ran an account with Varney, Williamson & Co., merchants, until they became indebted to them in the sum of $468.12, for which amount, on the 11th day of September, 1900, they gave the following order:

"Mr. T. F. Duncan, White Post, Ky.

"Dear Sir: You will please pay Varney, Williamson & Co., Four Hundred Sixty eight and 12.100 Dollars for balance on two notes executed to them for merchandise furnished us in our log job. This order to be paid when timber is delivered at Catlettsburg, Ky.

"Given under our hand, this 11th day of Sept., 1900.

"J. M. & J. H. Fraley."

This order was accepted by Duncan, as follows:

"This order accepted to be *pade* when oak logs is deliv,

ered to S. H. Nigh & Bro., Catlettsburg, Ky., this Sept. 11th, 1900.

T. F. DUNCAN."

This order was never paid to Varney, Williamson & Co., nor to the plaintiffs, although, upon settlement with Fraleys, this amount was deducted by Duncan from the sum owing to them for the logs. There was an effort to show that Duncan, instead of being interested with Nigh, had his contract with S. H. Nigh & Bro. It is true that Duncan states he believes the checks furnished by S. H. Nigh were signed S. H. Nigh & Bro., and that the acceptance of the order was that he would pay it when the logs were delivered to S. H. Nigh & Bro., at Catlettsburg, Ky. Yet he states emphatically that upon this particular job his contract was with S. H. Nigh individually.

The contention of the plaintiffs, that Nigh is liable because he promised Varney, Williamson & Co. to pay the debt, is not tenable, because, in the first place, the evidence fails to show the promise, and secondly, if shown, it would be a promise to pay the debt of another, and not being in writing, would be in violation of the Statute of Frauds, and not enforceable. Code, chapter 98, section 1. Therefore, the real question is, was there a partnership between Duncan and Nigh, and if so, is Nigh liable on account of the order given by Fraleys, and accepted by Duncan.

While the agreement between Nigh and Duncan was made shortly after Duncan had entered into the agreement with Fraleys for the purchase and delivery of the logs, yet the contract between Duncan and Fraleys was executory, and before the delivery of the logs it was agreed between Nigh and Duncan that Nigh was to pay for the logs, and that they were to sell them and share equally in the profits and losses. This contract has all the elements of partnership—one to make the purchases and to furnish all the labor necessary for conducting the business, and the other to furnish the capital, with the understanding that they shall share equally in the profits and losses. A partnership is the contract relation subsisting between persons who have combined their property, labor and skill in an enterprise or business as principals, for the purpose of joint profit. "The true test, to be determined

by looking at the agreement and all its parts and provisions, as well as its general character is, did the supposed partner acquire by his bargain, any property in, or control over, or specific lien to, the profits while they remained undivided, in preference to other creditors.    If he did, he is liable to third persons; and if otherwise, not." *Chapline* v. *Conant,* 3 W. Va. 507.    And in the opinion of the Court, in this case, it is announced: "The principles of the law of partnership lead to the conclusion that, if a trader makes an arrangement in regard to a commercial business with another, by reason of which that other becomes interested as owner, precisely as the firm is interested as owner, in the resulting profits, whatever be their repective proportions, while they are undivided and remain as profits, these two are certainly partners. And the same principles lead us directly to the other conclusion that a mere payment, or promise to pay, out of the profits a sum of money as a specific proportion of the profits does not necessarily constitute the payee a partner, and gives him no lien in the profits, and no right to the profits, but only a personal claim for such share of the profits, after they are ascertained, and may be divided." Apply these tests, and we find that Nigh became interested as owner, precisely as did Duncan, in the resulting profits, and in sharing the losses. The property was paid for by Nigh, under an agreement that it was to be shipped to Catlettsburg and sold, and the profits divided equally. "An agreement to share in the profit and loss of a business or adventure shows an intention to create a partnership unless such evidence of intention is controlled by stipulations or interpreted by conduct inconsistent with it." Bates, Partnership, section 25.    And in same book, section 28:    "If one person is to furnish the property, or the money with which to procure it, and the other is to give his services in disposing of it under an agreement by which they are to divide profit and loss, it is a partnership *inter se,* for a sharing of loss is generally inconsistent with a mere employment." The fact that this was a contract to purchase a certain lot of logs, or, what may be termed a single transaction, and not a general partnership, does not alter the rule.    "A partnership may exist in a single transaction of purchasing land with a view of selling it for profit." *Spencer* v. *Jones,* (Tex,) 71

Am. St. Rep. 870. And we find the same doctrine in *Jones* v. *Davis*, (Kan.) 72 Am. St. Rep. 354: "Partnership may exist for a single venture or undertaking, such as the purchase of land for speculation." A partnership may be formed for the purpose of dealing in land by buying and selling, generally, or it may be limited to a speculation upon a single venture. *Bates* v. *Babcock*, (Cal.), 29 Am. St. Rep. 134; *Flower* v. *Barnekoff*, 20 Ore. 132; *Demarest* v. *Koch*, 129 N. Y. 218; *Insurance Co.* v. *Ross, and Lennan*, 29 Ohio 429; *Ludlow* v. *Cooper*, 4 Ohio 1. "Persons without being partners generally in trade may be partners in a particular adventure." Collyer's Partnership, section 58.

Having determined that Duncan and Nigh are partners, then the question arises, is Nigh liable for the plaintiffs' debt, on account of the order given by Fraleys and accepted by Duncan? Nigh being a partner in the purchase of the logs, of course, became liable to Fraleys for the purchase money, although they may not have known of the partnership relation existing between him and Duncan. A silent or dormant partner is liable for the debts of the partnership. Bates, Partnership, sections 156–7. "A secret partner is therefore liable upon all of the acting partner's contracts made within the usual scope of the partnership business, whether such contracts are really on partnership account or not." Parsons, Contracts, section 81.

The order given by Fraleys operated as an assignment of their claim, and while it was drawn on Duncan, yet it was an assignment of a claim for which, as we have seen, both Duncan and Nigh were liable, and this being so, the assignees are entitled to all the rights of the assignors. And Nigh, being liable to Fraleys, is liable to the plaintiffs, the holders of the Fraley claim.

Inasmuch as this case must be remanded for another trial, it is proper to remark that what has been said as to the sufficiency of the plaintiff's evidence is for the purpose of showing the impropriety of sustaining the motion to exclude, and is not to in any way affect a subsequent trial before the jury.

For these reasons, the judgment of the circuit court is reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed.*