J. Howard Hundley
*v.*
Antonio Martinez
(No. 12666)

Submitted September 20, 1967. Decided December 12, 1967.

978

*H. D. Rollins,* for appellant.

*Steptoe & Johnson, Wilson Anderson, Carl F. Stucky, Jr.,* for appellee.

CAPLAN, JUDGE:

This is a malpractice action instituted in the Court of Common Pleas of Kanawha County by the plaintiff, J. Howard Hundley, against the defendant, Antonio Martinez, an ophthalmologist. In this action the plaintiff seeks recovery from the defendant for damages he claims to have suffered by reason of the alleged negligence of the defendant when the latter performed an operation on his right eye.

An examination of the record reveals that the plaintiff, having experienced difficulty with the vision of his right eye, went to see Doctor Martinez, the defendant, who informed him that he had a cataract formation and advised that it be corrected by an operation. The plaintiff consented and the operation was performed on him by the defendant on August 1, 1962. After the operation Mr. Hundley remained in the hospital for eight or nine days, during which time he was examined daily by Doctor Martinez who assured

him that the "eye was all right, getting along fine." For several weeks after the operation, upon the advice of his doctor, the plaintiff kept a veil or guard over his right eye.

According to the testimony of the plaintiff, he went to see the defendant on many occasions during the ensuing months and on each occasion he was assured by the defendant that his eye would be all right. He continued to inform Doctor Martinez that his vision was very poor in that eye and that he was virtually blind in the daylight. In November 1962 the defendant prescribed glasses but this attempted correction did not help Mr. Hundley, a practicing attorney in the City of Charleston, who was past eighty years of age. He continued to call upon the defendant until May 22, 1963 when he paid his last visit. During all of these visits, Doctor Martinez repeatedly told him his eye was all right and that he would recover his vision. Finally, on May 22, 1963, the defendant told him he could not prescribe any further glasses and that the plaintiff's difficulty was that he had retina trouble. The plaintiff testified that during the months subsequent to the operation he was relying on his doctor and believed that his vision would improve. However, there was no improvement and Mr. Hundley continues to be virtually blind in that eye.

Several months after the operation, Mr. Hundley began to have serious difficulty with the vision of his left eye. As a consequence, on February 12, 1965, he consulted Doctor A. C. Chandler, a specialist in eye surgery, and was informed that he was in need of an operation for a cataract on his left eye. This operation was performed by Doctor Chandler on March 5, 1965. The plaintiff testified that Doctor Chandler on this occasion examined his right eye and informed him that more than half of the iris of that eye was missing and stated that he could not help him. The question and answer pertaining to the condition of the right eye

were objected to by the defendant and the objection was sustained. Doctor Chandler did not testify in the trial of this case.

Mr. Hundley related that Doctor Chandler's report of the condition of his eye was the first information that he had that his eye was permanently damaged and that his vision would not return.

This malpractice action was instituted on May 5, 1965, wherein he charged that Doctor Martinez "negligently and carelessly cut, tore, severed and otherwise removed more than one-half of the iris of his, the plaintiff's said eye***". His complaint alleges total and permanent impairment of his sight.

It should be noted that the date of the operation performed on the plaintiff by the defendant was August 1, 1962 and that the action was instituted on May 5, 1965. The plaintiff, anticipating a plea of statute of limitations, charged in the complaint "that the defendant well knew at the time that he had wrongfully removed a large part of the iris of the plaintiff's eye and had severed the aforesaid muscles controlling the pupil of the plaintiff's eye. He thereafter deliberately and fraudulently withheld this information from the plaintiff and fraudulently deceived the plaintiff by telling him that his eyesight would improve; and that he had trouble with the retina of his eye and that such trouble was the cause of his lack of ability to use his eye, which was wholly untrue since he knew that the condition would not and could not improve, and he knew that the plaintiff had no retina trouble whatsoever. The plaintiff did not know that a large part of the iris of his eye had been torn away and did not learn about the deception practiced upon him by the defendant until a few weeks prior to the institution of this action when he went to the office of another eye specialist who examined his eye and advised him that a large part of the iris of his eye was missing, and the aforesaid muscles controlling the pupil of his eye

had been severed, which was the reason that he was unable to use his said eye."

In answer, the defendant, Doctor Martinez, denied that he was guilty of negligence in the performance of the operation and further interposed a plea of the statute of limitation. It is, of course, his position in relation to that plea that if he were negligent such negligence occurred on August 1, 1962, the date of the operation, and that more than two years having passed prior to the institution of this action, such action was barred by the statute of limitations.

During the trial the plaintiff called Doctor Martinez to testify as a "hostile" witness. During his testimony, Doctor Martinez read into the record his official report of the operation as dictated to his secretary immediately after said operation. This was permitted by the court but the plaintiff's request to have a photostatic copy thereof admitted as evidence was denied by the court. The testimony of Doctor Martinez, reading from the report, is as follows:

" 'Mr. J. Howard Hundley, 215 Loma Road, Charleston, West Virginia. DI 3-6823. Age 80. 8/1/62. Operation: Cataract extraction, right eye. Operating Surgeon: Dr. Antonia C. Martinez. Assistant Surgeon: Dr. Edwin M. Shepherd. Under local anesthesia of Novocain and Hydase, a conjunctival flap was made toward the cornea and the incision was made about one millimeter behind the limbus in the scleral tissue. We applied five sutures and we did three peripheral iridectomies.

'It should be iridotomies—it's iridectomies but it should be iridotomies.

'The erisophake was placed on the lens and the lens dislocated posteriorly with fluid viterous presenting. The erisophake did not take hold. We caught the lens with the spoon which engaged the iris. The iris was very thin and tore and the greater part of it

had to be removed. We closed the wound. Put air in the anterior chamber and injected penicillin subconjunctivally. AM: bas.' '' "Bas is the initial of my secretary."

Following the testimony of Mr. Hundley, counsel for the plaintiff offered the deposition of Walter R. Loewe, an ophthalmologist of New York City, and requested that it be read into the record. Thereupon, counsel for the defendant objected to the admission of such deposition on the ground that this witness did not qualify himself as being familiar with the standards of care, practice and skill employed by medical practitioners in Charleston, West Virginia and the vicinity at the time of the operation on the plaintiff by the defendant in August, 1962. The objection was overruled by the trial court, and, after certain specific objections to Doctor Loewe's testimony were ruled upon, the deposition was read to the jury. At the conclusion of the reading of the testimony of Doctor Loewe, the plaintiff rested.

Defendant, by his counsel, then moved the court to direct a verdict in his favor, stating as grounds therefor that the plaintiff had failed to make a prima facie case against him, and that any injury or damage to the eye of the plaintiff being open and visible, the cause of action, if any, accrued on August 1, 1962 and necessitated the institution of such action within two years from that date. This action, having been instituted on May 5, 1965, is barred by the statute of limitations, contends the defendant. After a discussion of this motion, the court, stating that he did not believe that the action of Doctor Martinez constituted "positive affirmative action to conceal something from Mr. Hundley or perpetrate a fraud upon him," sustained the plea of the statute of limitations and entered judgment for the defendant. The plaintiff's motion to set aside the judgment was overruled and an appeal was taken to the Circuit Court of Kanawha County. As-

signed as error was the action of the trial court in sustaining the plea of the statute of limitations. The defendant assigned as cross error the admission of the testimony of Doctor Loewe.

The Circuit Court, having granted an appeal and having considered the case on briefs and arguments of counsel, reversed the action of the trial court in sustaining the plea of the statute of limitations. On the cross assignment of error the Circuit Court sustained the position of the defendant and held that the testimony of Doctor Loewe was not admissible. That court was of the opinion that Doctor Loewe "was not qualified to express an opinion as to whether or not the defendant, Antonio Martinez, was guilty of malpractice." Thus, the case was remanded to the Court of Common Pleas for retrial in accordance with the opinions expressed in the Memorandum of Opinion.

Although the plaintiff ostensibly prevailed in the Circuit Court, he prosecutes this appeal on the ground that in awarding him a new trial the Circuit Court erroneously stated the law in two particulars. In his petition for appeal in this Court he states the errors upon which he relies as follows:

"1. The Circuit Court erred in holding that the question [for the jury was] *** whether or not the appellee, Antonio Martinez, fraudulently concealed from the appellant, J. Howard Hundley, the condition of which he, the appellant, complains and the related question of whether or not the appellant by the exercise of reasonable diligence should have discovered his condition within two years from the date of the operation performed upon him by the appellee. ***"

"2. The Circuit Court erred in ruling and holding that the testimony of Doctor Walter R. Loewe, the New York eye specialist, should be excluded on retrial of the case, since Dr. Loewe was not qualified to express an opinion as to whether or not the appellee, Antonio Martinez, was guilty of malpractice."

It is the position of the plaintiff, in relation to the first assignment of error, that the proposition which should have been submitted to a jury is whether Doctor Martinez fraudulently concealed from him the condition of which he complains, and if so, whether he, the plaintiff, learned or by the exercise of reasonable diligence should have learned of his condition more than two years prior to the date he instituted this action. It is obvious, as to the second assignment, that the plaintiff believes the testimony of Doctor Loewe to be proper and admissible in evidence upon a retrial of this case.

Before proceeding with the principal issues involved in this case, the application of the statute of limitations and the admissibility of the testimony of Doctor Loewe, it is pertinent to comment on the defendant's contention that this appeal was improvidently awarded. It is asserted by the defendant that inasmuch as the plaintiff, upon appeal to the Circuit Court of Kanawha County, was granted a new trial, the order of said court was not prejudicial to him and he could not seek relief therefrom.

It is provided in Code, 1931, 58-5-1, that an appeal may be obtained from this court by a party to a controversy in any circuit court "(i) In any civil case where there is an order granting a new trial or rehearing, and in such cases an appeal may be taken from the order without waiting for the new trial or rehearing to be had; ***." This code provision makes no reference to a prevailing or losing party as the party who may file a petition for appeal. It merely says a party to a controversy may obtain an appeal under the circumstances described in subsection (i), quoted above. Therefore, in such circumstances either party may apply for an appeal and such appeal may be granted. While the party seeking the appeal is ordinarily satisfied by a reversal and an award of a new trial, he may be dissatisfied with the specific ruling of

the court. In that circumstance the language of the above statute clearly provides that the controversial portion of the circuit court's order reversing the trial court can be adjudicated on appeal to this court without waiting for a new trial to be had. Furthermore, in the instant case, by reason of the cross assignment of error, the Court is confronted with the question of the admissibility of the testimony of Doctor Loewe. This assertion of the defendant being without merit, the appeal will not be dismissed as improvidently awarded.

Turning now to the question presented on this appeal relating to the statute of limitations, it is pertinent to consider the character of this action. This is a medical malpractice action which sounds in tort. Therefore, the time limitation for the institution thereof is that applicable to tort actions. Code, 1931, 55-2-12, as amended, provides: "Every personal action for which no limitation is otherwise prescribed shall be brought: *** (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; ***."

Ordinarily the right to bring an action for personal injuries accrues when the injury is inflicted. In a malpractice case that generally would be from the time of the negligent act. However, there are exceptions to this general rule. One exception which is commonly recognized as tolling the statute is where the physician has fraudulently concealed the facts showing negligence. This is pertinent here because, as noted above, the plaintiff has included such an allegation in his complaint. The plaintiff charged that the defendant deliberately and fraudulently deceived him in that he told the plaintiff that his eye would be all right and that his vision would improve, notwithstanding the fact that the defendant well knew he had torn in excess of one half of the iris from the plaintiff's eye and that such condition was irreparable.

Also, he told the plaintiff that he had retina trouble when, in fact, he well knew that no such trouble existed.

In the event of such fraudulent concealment by a physician, the statute of limitations begins to run when the fraud is penetrated and the injury is discovered or when, by the exercise of reasonable diligence, it should have been discovered. See Code, 1931, 55-2-17, which provides: ''Where any such right as is mentioned in this article shall accrue against a person who had before resided in this state, if such person shall, by departing without the same,*** *or by any other indirect ways or means,* obstruct the prosecution of such right, *** the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted.'' (Italics supplied.) See also 41 Am. Jur., Physicians and Surgeons, Sec. 123; 34 Am. Jur. Limitations of Actions, Sec. 231; and 54 C.J.S., Limitations of Actions, Sec. 206.

It is contended by the defendant in the instant case that the plaintiff's evidence ''fell woefully short of establishing conduct on the part of the defendant which served to obstruct plaintiff in his right of recovery and which constitutes active fraud and concealment within the meaning of the Statute.'' It has been held by this Court that obstruction by the defendant must be by a positive act; that mere silence will not constitute obstruction sufficient to toll the running of the statute; and that the act which interferred with the plaintiff's rights must be alleged. See *Gray v. Wright,* 142 W. Va. 490, 96 S.E. 2d 671; *Baker v. Hendrix,* 126 W. Va. 37, 27 S.E. 2d 275; *Teter v. Moore,* 80 W. Va. 443, 93 S.E. 342; *Boyd v. Beebe,* 64 W. Va. 216, 61 S.E. 304, 17 L.R.A. (N. S.) 660.

In view of the defendant's contention and of the state of the law as reflected in the above cited cases, let us consider the evidence presented in this case.

Doctor Martinez testified from his report of the operation that "The iris was very thin and tore and the greater part of it had to be removed." Yet, according to the testimony of Mr. Hundley, he repeatedly told Mr. Hundley that the eye upon which he operated would be all right and that his vision would improve. Doctor Martinez knew that his patient's vision would not improve, inasmuch as the iris was largely gone. Had he then informed Mr. Hundley of what had happened, an action could have been instituted and it then could have been judicially determined whether or not the Doctor had been negligent. Instead he led Mr. Hundley to believe that the operation was successful. Mr. Hundley relied upon his representations that his eye would be all right.

The defendant says that there could be no concealment of the injury because the damage was open and apparent as evidenced by the enlarged pupil which could be readily viewed by the plaintiff every time he shaved. Is a layman going to be charged with knowledge of an injury on this evidence? Must he know how the eye should appear after a cataract operation? Certainly not! We consult and rely upon our physician for information concerning our physical condition, particularly after an operation.

Furthermore, on May 22, 1963, Doctor Martinez told Mr. Hundley that he had retina trouble. There is nothing in the record of this case which shows that the plaintiff had any difficulty by reason of his retina.

The fraudulent concealment, if any, by Doctor Martinez of the injury to the plaintiff's right eye was the result of a positive act, not mere silence. Also, such acts were unquestionably alleged in the complaint and proof thereof was offered. Clearly there was sufficient evidence in this case to warrant jury consideration and determination of the question as to whether or not Doctor Martinez fraudulently concealed from the plaintiff the condition of which he complains. It was

also for the jury to determine from the evidence when Mr. Hundley became apprised of the injury to his eye or when, through the exercise of reasonable diligence, he should have known of such injury.

The defendant contends that in this jurisdiction a right of action for medical malpractice comes into existence when the wrong is committed, except in situations where foreign objects are left in the body of the patient. In the latter instance the cause of action does not accrue until the patient discovers, or in the exercise of reasonable diligence should have discovered, the presence of the foreign object. Recognizing the "discovery rule", the defendant cites *Morgan v. Grace Hospital,* 149 W. Va. 783, 144 S.E. 2d 156. However, says the defendant, the instant case is not one involving a foreign object in the body, and the rule enunciated in *Morgan* does not apply.

While the *Morgan* decision did restrict the discovery rule to "foreign objects in the body" cases, it did not abrogate the rule in medical malpractice cases, in relation to the statute of limitations, which holds that the statute will be tolled where the physician fraudulently conceals the condition of which the plaintiff patient complains. *Gray v. Wright,* 142 W. Va. 490, 96 S.E. 2d 671; *Baker v. Hendrix,* 126 W. Va. 37, 27 S.E. 2d 275. As stated above, there is evidence in the instant case of fraudulent concealment and the action of the Circuit Court in reversing the judgment of the Common Pleas Court and granting a new trial is approved.

However, upon the retrial, there shall be no limitation from the date of the operation within which the right of action had to be discovered or, by the exercise of reasonable diligence, should have been discovered by the plaintiff. We concur in the position of the plaintiff which states that the question for the jury is whether the defendant fraudulently concealed from the plaintiff the condition of which he com-

plains, and if so, whether the plaintiff learned of the same or by the exercise of reasonable diligence should have learned of it more than two years prior to the date he instituted this action.

In *Baker v. Hendrix*, 126 W. Va. 37, 27 S.E. 2d 275, the alleged negligence occurred during the performance of an operation in 1935 but was not discovered until 1942. The Court held that the period of limitation provided by Code, 1931, 55-2-12, as amended, was suspended during such time as the defendant by fraud or other indirect ways or means obstructed the prosecution of the plaintiff's right of action. No mention was made nor was there any limitation designated from the date of the operation as to when the injury was or should have been discovered. In addition to the ruling in the *Baker* case, it is pertinent that an examination of Code, 1931, 55-2-17, fails to disclose any limitation on the time that the obstruction may continue. Yet, it is clear that during the entire time of obstruction, the statute of limitations is suspended.

The remaining question to be resolved on this appeal is whether or not the testimony of Doctor Walter R. Loewe, an ophthalmologist of New York City, is admissible. It is the contention of the defendant that Doctor Loewe, never having practiced his profession in Charleston, West Virginia, was not familiar with the standard of medical care in that city, and was not, therefore, qualified to express an opinion concerning the alleged negligence of the defendant. So held the Circuit Court of Kanawha County in ruling that Doctor Loewe's testimony would be inadmissible upon the retrial of this case.

To be considered here is the applicability of the "locality" rule as it pertains to the testimony of a physician in a medical malpractice case. Under the strict and narrow version of this rule, the competence of an expert medical witness to testify about standard of care is determined by his familiarity with the care

ordinarily exercised in the same locality in which the defendant practiced. Prosser, Torts (2nd ed. 1955), Sec. 31. The "locality" rule came into being in the 19th century and was premised upon the thought that it was unfair to hold the country doctor to the same stringent standard as the supposedly more learned doctors practicing in large urban centers. This was cogently reflected in *Small v. Howard,* 128 Mass. 131, 35 Am. Rep. 363, wherein the court expressed its sympathy for the plight of the country doctor as follows: "It is a matter of common knowledge that a physician in a small country village does not usually make a speciality of surgery, and, however well informed he may be in the theory of all parts of his profession, he would, generally speaking, be but seldom called upon as a surgeon to perform difficult operations. He would have but few opportunities of observation and practice in that line such as public hospitals or large cities would afford."

In 1880, when the *Small* case was decided, there was perhaps sound reason for the "locality" rule. Doctors living and practicing in rural areas could not be expected to possess the same degree of medical knowledge as did their urban counterparts. This situation has changed materially, however, it being apparent that the doctor in the rural area now has available to him most of the same facilities as does the practitioner in the city. Due to highly improved modes of transportation, most physicians have at their disposal adequate to excellent hospital facilities. In addition, the now ready means of communication has permitted the doctor, regardless of his location, to keep abreast of recent medical developments and practices. Through the media of medical journals and associations many physicians studiously pursue postgraduate medical education.

In view of these obvious transformations in today's society, the reasons for the strict application of the

"locality" rule have largely disappeared. The rule has lost much of its significance, as evidenced by the following expression of the court in *Gist v. French,* 136 Cal. App. 2d 247, 288 P. 2d 1003: "Today the discoveries of insulin, iron, quinine, strichnine or the antibiotics is instantly heralded throughout the civilized world and as speedily communicated are the methods of administering them and the symptoms for which they are to be applied. Every great hospital in the land maintains systems for preserving statistical information relative to the treatment of diseases and injuries, much of which is published to the medical world in attractive journals, whereby practitioners are equipped immediately to utilize the new remedies. The same is true with respect to all new methods and devices of the surgical art. The ubiquity of such knowledge, the popularity of ethical standards in every part of the nation and the uniformity of curricula in medical schools have combined to create one community of medical practitioners out of the 48 states and the District of Columbia. Surely, a surgeon in San Luis Obispo has acquired practically the same knowledge of surgery that is practiced in both San Francisco and Los Angles." See also *Montgomery v. Stary,* Fla., 84 So. 2d 34; *McElroy v. Frost,* Okl., 268 P. 2d 273; *Geraty v. Kaufman,* 115 Conn. 563, 162 A. 33; *Iterman v. Baker,* 214 Ind. 308, 15 N. E. 2d 365; *Bartholomew v. Butts,* 232 Iowa 776, 5 N. W. 2d 7; and *Riley v. Layton,* 329 F. 2d 53.

The significance of the degree with which the "locality" rule should be applied becomes apparent in view of the universally accepted principle that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses. *Schroeder v. Adkins,* 149 W. Va. 400, 141 S.E. 2d 352; *Roberts v. Gale,* 149 W. Va. 166, 139 S.E. 2d 272; *Riley v. Layton,* 329 F. 2d 53; *Marsh v. Pemberton,* 10 Utah 2d 40, 347 P. 2d 1108; *Carbone v. Warburton,* 11 N. J. 418, 94 A. 2d 680; Prosser, Torts (2nd ed. 1955), Sec.

31. Such expert testimony frequently is not readily available. As stated in Prosser, Torts (2nd ed. 1955), Sec. 31, ''The well known reluctance of doctors to testify against one another, which has been mentioned now and then in the decisions, may make this [expert medical testimony] difficult or impossible to obtain.'' Therefore, if a plaintiff in a malpractice action is not permitted to obtain expert testimony of a physician who practices outside the domain of the defendant doctor, he may be denied completely the opportunity of proving the negligent acts of which he complains.

While the majority of recent decisions reflects a definite liberalization of the ''locality'' rule, in which liberalization we concur, we do not here abrogate such rule in all instances. Each case must be considered on its own facts.

It is well settled by decisions of this Court that in an action for damages against a physician for negligence or want of skill in the treatment of an injury or disease, the burden is on the plaintiff to prove such negligence or want of skill, resulting in injury. *Schroeder v. Adkins,* 149 W. Va. 400, 141 S.E. 2d 352; *Roberts v. Gale,* 149 W. Va. 166, 139 S.E. 2d 272; *White v. Moore,* 134 W. Va. 806, 62 S.E. 2d 122. Clearly, therefore, it was incumbent upon the plaintiff in the instant case to produce medical testimony to support his complaint. This he did in the form of the deposition of Doctor Walter R. Loewe, an ophthalmologist who practices his profession in New York City.

The defendant contends that Doctor Loewe is not qualified to express an opinion concerning the alleged negligence. Doctor Loewe graduated from Tufts College Medical School in 1917. He took post graduate courses from 1921 through 1923, both in this country and in the leading clinics in Europe. Since 1923, he has practiced ophthalmology exclusively. His qualifications cover in excess of two pages in the printed record. It appears therefrom that Doctor Loewe's credentials relating to his medical education and train-

ing, his varied practice and wide experience and his medical association memberships clearly are adequate to qualify him as an expert witness in the field of ophthalmology. However, asserts the defendant, Doctor Loewe is not qualified to testify in this case because he is not familiar with the standard of medical practice in Charleston, West Virginia. Thus, the defendant seeks a strict application of the "locality" rule.

Doctor Loewe testified at length as to the manner in which a cataract operation should be performed. He said he had performed thousands of them. In relation thereto the following testimony was adduced: "Q. Doctor, about the methods and procedure for operating on a cataract, you told how an operation should be performed. Is that the standard procedure throughout the country? A. The portion of the cataract operation that I described before is the standard for the entire United States. Q. Would you expect such a method to be followed in a city the size of Charleston, West Virginia? A. We have a lot of doctors from various parts of the country visit New York and our doctors visit other areas of the country. We have annual conversations or meetings like the American Association—the American Academy of Ophthalmology and Otolaryngology where we all can exchange views and information. This is the standard method used throughout this country."

In this proceeding we are not concerned with Doctor Loewe's testimony relating to the alleged negligence of Doctor Martinez. Our principal concern is Doctor Loewe's qualification to testify. In view of his testimony and the circumstances of this case, we are of the opinion that Doctor Loewe is sufficiently familiar with the standard of care used in performing cataract operations in Charleston, West Virginia, to constitute him a competent witness in this medical malpractice action. He described in detail the procedure to be followed in performing a cataract opera-

tion. This was precisely the same procedure described by Doctor Martinez upon performing this operation on the plaintiff. Doctor Loewe well demonstrated that this is the standard procedure throughout the country and that he is familiar with such standard. Certainly his familiarity with this standard procedure would cover Charleston as well as other parts of the country.

The defendant relies on *Dye v. Corbin*, 59 W. Va. 266, 53 S.E. 147, in support of his contention that Doctor Loewe's failure to testify that he was familiar with the standard in Charleston, West Virginia, disqualified him as a witness in this case. We cannot agree that the *Dye* case stands for the proposition for which the defendant contends; nor do we find it necessary to depart from the principles stated therein. The Court in the *Dye* case used the "similar locality" rule not the "same locality" rule, as would the defendant. Therein the Court said: "A physician * * * is only required to exercise such reasonable and ordinary skill and diligence as are ordinarily exercised by the average of the members of the profession in good standing, in *similar* localities and in the same general line of practice, regard being had to the state of medical science at the time." (Italics supplied.) When Doctor Loewe testified that he was familiar with the standard of procedure in relation to cataract operations throughout the country, certainly localities similar to Charleston were included within his scope of knowledge. See Annotation, Expert Witness In Malpractice Case, 8 A.L.R., 2d 772 at 773 and 41 Am. Jur., Physicians and Surgeons Sec. 87.

An additional reason for holding the testimony of Doctor Loewe admissible is that Doctor Martinez, the defendant, is an ophthalmologist, a specialist in the treatment of diseases of the eye. To attain this degree of specialization a physician must undertake considerable additional medical education and training. Of necessity he learns the latest in surgical procedures and treatment of the eye. He must, therefore, be

charged with a higher degree of skill and knowledge in the treatment of the eye than the physician without such additional training. 41 Am. Jur., Physicians and Surgeons, Sec. 90; Annotation, 68 A.L.R. 2d 426. Doctor Martinez performed this cataract operation in a modern hospital, with the same instruments which Doctor Loewe related he used in such operations. As a specialist, with the advantage of additional training and a higher degree of skill, the defendant is charged with knowledge of the standard procedure for cataract operations throughout the country.

In the circumstances of this case we perceive no reason for excluding the testimony of Doctor Loewe. The record reveals that he is eminently qualified to testify as an expert witness in the field of ophthalmology. We reject the strict application of the "locality" rule and hold that Doctor Loewe's testimony shows that he is familiar with the standard of medical practice in areas similar to Charleston and is therefore sufficiently familiar with that standard in Charleston to testify in this malpractice case.

For the reasons stated herein the judgment of the Circuit Court of Kanawha County is affirmed in part and reversed in part and the case is remanded for a new trial in accordance with the principles enunciated in this opinion.

*Affirmed in part;*
*reversed in part;*
*remanded with directions.*