PATSY PINFOLD, CHARLES PINFOLD, *an Infant,* WHO SUES BY PATSY PINFOLD, HIS NEXT FRIEND, *and* HAROLD K. McKINSTRY, *Administrator of the Estate of Diana Marie Stanley, Deceased*

*v.*

CLARENCE LESLIE HENDRICKS

(No. 13003)

Submitted September 28, 1971. Decided November 30, 1971.

*Preiser, Greene, Hunt & Wilson, W. Dale Greene,* for appellant Patsy Pinfold.

*Herman D. Rollins,* for appellant Harold K. McKinstry.

*Bowers, File, Hodson & Payne, W. H. File, Jr.,* for appellee.

CALHOUN, JUDGE:

This case is before the Court upon an appeal by the plaintiffs from a final judgment entered by the Circuit Court of Fayette County in a civil action instituted in that court by Patsy Pinfold, Charles Pinfold, an infant who sued by Patsy Pinfold as his next friend, and Harold K. McKinstry, administrator of the estate of Diana Marie Stanley, deceased, as plaintiffs, against Clarence Leslie Hendricks, as the defendant. The question presented for decision upon this appeal is whether the trial court erred in directing a verdict in favor of the defendant after the plaintiffs had rested their case in chief.

The civil action arose out of collisions involving three automobiles. It was stipulated by the parties that the collisions of the automobiles occurred on the bridge which crosses the Gauley River in the community of Gauley Bridge, in Fayette County, at approximately 9:15 a.m. on November 24, 1967; that at the time the accident occurred, the highway leading to the bridge was "damp from a drizzle of rain"; and that the surface of the bridge was "covered by a sheet of ice and was slick."

At the time the accident occurred, Arthur E. Henry was driving a Chevrolet automobile in a westerly direction upon U. S. Route 60. With Henry, as passengers in his automobile, were his wife, Patience Henry, who occupied the middle portion of the front seat; Patsy Pinfold, a passenger on the right-hand side of the front seat; and Diana

Marie Stanley, Jim Eskew and Charles Pinfold, who were seated on the rear seat of the automobile.

As a result of the accident, Diana Marie Stanley was killed and other passengers in the Henry automobile sustained personal injuries. The civil action was instituted to recover damages for the death of Diana Marie Stanley and to recover damages for personal injuries sustained by the other plaintiffs.

Immediately before the accident occurred, Clarence Leslie Hendricks, the defendant, the owner and operator of a Pontiac automobile, was proceeding in a westerly direction on U. S. Route 60 behind the automobile driven by Arthur E. Henry. The third motor vehicle involved in the accident was a Mercury automobile owned and operated by Harry S. Hamrick. At the time the accident occurred, Hamrick was proceeding in an easterly direction on U. S. Route 60.

Apparently the theory of the plaintiffs' action was that the defendant, Clarence Leslie Hendricks, was negligently driving his automobile too close to the rear of the Henry vehicle and that, as a result thereof, the Hendricks automobile struck the rear of the Henry automobile thereby knocking it out of control and causing it to collide with the Hamrick automobile.

Arthur E. Henry testified that he was traveling in his automobile westward toward Charleston on U. S. Route 60; that he had left Richmond, Virginia, at about "one or two o'clock in the morning"; that approximately "a half-hour or an hour" before the accident, he and the other passengers in his automobile had stopped at a restaurant for breakfast; that he first became aware of the Hendricks automobile about two miles "before the place of the accident"; and that the Hendricks automobile was "close to my back" or about two feet from the rear of his automobile as the two vehicles approached the bridge. Henry testified that "he slowed down" and that he was driving "about twenty miles per hour" as he approached the bridge; and that he "felt a bump" when he got on

the bridge. In his testimony, he stated: "I remember feeling a bump in the back, like another car striking me in the back." He testified that he remembered nothing further until he awoke in the hospital. He had no recollection whatsoever concerning a collision of his automobile with either of the other two automobiles.

A photograph, taken at the scene of the accident and introduced in evidence, reveals that the rear portion of the Henry automobile was severely damaged. Henry testified that the rear of his automobile was not damaged prior to the time of the accident.

Upon cross-examination by counsel for the defendant, Henry testified that he and his wife had left their home in Arlington, Virginia, early on the morning preceding the occurrence of the accident; that they drove to Washington, D. C., about an hour's drive; that from Washington, they drove to a restaurant in Maryland which required about an hour or one and one-half hours of travel in the automobile; and that from the restaurant they returned to Washington and then to their home in Arlington, which involved an additional two or two and one-half hours of driving. From their home in Arlington, Henry and his wife drove back to Washington, where they picked up Diana Marie Stanley and Jim Eskew. From Washington, Henry drove to Richmond, Virginia, arriving there at about 9:30 p.m.

Henry testified further upon cross-examination that, at the time the accident occurred, everyone else in his automobile was asleep and that he had not slept since sometime the previous morning. It follows, therefore, that he had not slept during a period of more than twenty-four hours prior to the time the accident occurred.

Harry S. Hamrick testified that he was proceeding in an easterly direction on U. S. Route 60 on the morning of the accident and that, as he approached the bridge, he observed that two automobiles were coming toward him from the opposite direction and that both of the automobiles were out of control. Hamrick stated in his testimony

that the two automobiles were about "three or three and a half car lengths" or "ninety to a hundred feet" apart "at the most." According to his testimony, Hamrick drove his automobile onto the sidewalk on his right-hand side of the bridge in an effort to avoid a collision but that, while his automobile was still in motion, it was "hit twice, once from the front and once from the side." Hamrick testified further that the first impact was caused when his automobile was struck by the Henry vehicle, but that he was thereby "knocked unconscious" and that consequently he did not know what brought about the second impact.

The defendant, Clarence Leslie Hendricks, testified that, as he approached the bridge, he was traveling at a speed of "thirty-five to forty miles" an hour; that he had not reduced his speed when he got on the bridge; that he was traveling "three to four car lengths" behind the Henry vehicle; and that he was traveling at approximately the same rate of speed as the Henry automobile. According to the defendant's testimony, Henry's automobile "slid across the yellow line," on the bridge, collided with the Hamrick vehicle which was approaching from the opposite direction, and that the Henry automobile "made a complete circle" while on the bridge. The defendant testified further that as the Henry automobile "made a complete circle", it hit the left front fender of the defendant's automobile, thereby damaging the fender, the bumper and the hood of the defendant's automobile.

Patsy Pinfold, one of the plaintiffs who was a passenger in the Henry automobile, testified that she had no memory whatsoever of the circumstances which resulted in the accident and that the last thing she remembered was being in Richmond, Virginia, on the preceding day. Her testimony at the trial related solely to her personal injuries which resulted from the accident.

In reviewing the action of the trial court in directing the verdict in favor of the defendant, we bear in mind two general principles by which a court must be guided in such a situation. One of these is stated as follows in the

first point of the syllabus of *Fielder* v. *Service Cab Company,* 122 W.Va. 522, 11 S.E.2d 115: "Before directing a verdict in a defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence." To the same effect, see *Smith* v. *Edward M. Rude Carrier Corp.,* 151 W.Va. 322, pt. 5 syl., 151 S.E. 2d 738; *Roberts* v. *Gale,* 149 W.Va. 166, pt. 3 syl., 139 S.E. 2d 272; *Roush* v. *Johnson,* 139 W.Va. 607, pt. 1 syl., 80 S. E.2d 857; *Raeder* v. *Sconish,* 133 W.Va. 795, 58 S.E.2d 265. The other general principle applicable to a motion for a directed verdict is stated in the fourth point of the syllabus of *Wood* v. *Shrewsbury,* 117 W.Va. 569, 186 S.E. 294, as follows: "If, in the trial of a law action, the controlling facts which appear from the evidence are so conclusive that the court would be impelled to set aside a verdict adverse to such facts, the court should direct a verdict in conformity therewith." To the same effect, see *Beneficial Finance Company of Charleston* v. *Collins,* 150 W.Va. 655, pt. 5 syl., 149 S.E.2d 221; *McMicken* v. *Province,* 141 W.Va. 273, pt. 2 syl., 90 S.E.2d 348; *Hicks* v. *New River & Pocahontas Cons. Coal Co.,* 95 W.Va. 17, pt. 1 syl., 120 S.E. 898.

The plaintiffs' case on the question of liability is predicated solely upon the following inconclusive testimony of Arthur E. Henry, the driver of the automobile in which the plaintiffs were passengers at the time the accident occurred:

"Q. Tell us in your own words just exactly how this wreck happened.

"A. I remember feeling a bump in the back, like another car striking me in the back.

"Q. Do you recall anything else?

"A. No, sir.

\* \* \*

"Q. What is the next thing that you remember?

"A. Waking up in the hospital."

It is pertinent to note that Henry did not testify that his automobile actually was struck in the rear by the defendant's automobile. His testimony in this respect furnishes nothing more than a mere basis for speculation or conjecture concerning the nature or cause of the alleged "bump in the back." "Juries will not be permitted to base their findings upon conjecture or speculation." *State ex rel. Shatzer* v. *Freeport Coal Company,* 144 W.Va. 178, pt. 4 syl., 107 S.E.2d 503.

To the extent that Arthur E. Henry's testimony implies that the initial impact was caused by his automobile being struck in the rear by the defendant's automobile, he is contradicted by the clear and specific testimony of the defendant and Harry S. Hamrick. These two witnesses, according to their testimony, actually witnessed the movement of the Henry automobile out of control before it came in contact with the Hamrick automobile. The defendant testified that the initial impact or collision occurred when the Henry automobile struck the Hamrick automobile. Hamrick testified that the initial collision with his automobile involved the Henry automobile.

We recognize, of course, that the weight or preponderance of evidence is not determined merely on the basis of the numerical preponderance of witnesses. *Lusher* v. *Sparks,* 146 W.Va. 795, pt. 5 syl., 122 S.E.2d 609; *Testerman* v. *Hines,* 88 W.Va. 547, pt. 4 syl., 107 S.E. 201. We are of the opinion that Henry's testimony is inherently incredible to some extent and also in some respects contradictory. According to his testimony, he did not recall having seen the Hamrick automobile before the collision, though it is undisputed that the bridge was straight and level and that the weather conditions were not such as to impair visibility. There is no evidence to indicate that any of the sleeping passengers in the Henry automoblie were awakened by any impact, collision or sound before the Henry automobile collided with the Hamrick automobile. In one portion of his testimony, Henry stated that he "felt a bump when we got onto the bridge." In another portion

of his testimony, he stated that he felt the bump when he was "entering on the bridge." In another portion of his testimony, when asked where he was when he felt the bump, he stated: "Approaching the bridge, is all I remember, and going up on the bridge."

For reasons stated, we are of the opinion that the trial court did not err in directing the jury to return a verdict in favor of the defendant and, therefore, the judgment of the Circuit Court of Fayette County is affirmed.

*Affirmed.*