ZULA HINKLE

*v.*

W. BECKETT MARTIN

(No. 13895)

Decided July 17, 1979.

*E. Dennis White, Jr., Bernard T. Nibert, II, Clovis D. Kuhn* for appellant.

*Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Michael J. Farrell* for appellee.

CAPLAN, CHIEF JUSTICE:

This is an appeal from an order of the Circuit Court of Cabell County awarding Dr. W. Beckett Martin, the defendant in this medical malpractice action, a directed verdict against Zula Hinkle, the plaintiff.

Mrs. Hinkle instituted this action by filing a complaint which alleged that Dr. Martin, a dermatologist, by negligently administering x-ray treatments, had injured her fingers. The case went to trial before a jury on January 27, 1975. At the conclusion of the presentation of Mrs. Hinkle's evidence, the trial court concluded that she had failed to make a *prima facie* case and directed a verdict for Dr. Martin. In this appeal, Mrs. Hinkle contends that the court's action in directing a verdict constituted reversible error.

The rule in this jurisdiction is that when the plaintiff's evidence does not *prima facie* entitle him to recover, a motion to exclude it and direct a verdict for the defendant should be sustained. *Williamson & Co. v. Nigh*, 58 W. Va. 629, 53 S.E. 124 (1906); *Dye v. Corbin*, 59 W. Va. 266, 53 S.E. 147 (1906); *White v. Moore*, 134 W. Va. 806, 62 S.E. 2d 122 (1950); *Roberts v. Gale*, 149 W. Va. 166, 139 S.E. 2d 272 (1964); *Pinfold v. Hendricks*, 155 W. Va. 489,

184 S.E. 2d 731 (1971). In view thereof, the question confronting us in this proceeding is whether Mrs. Hinkle introduced sufficient evidence to establish a *prima facie* case of medical malpractice as alleged in her complaint.

During the trial of this case Mrs. Hinkle introduced the testimony of seven witnesses.

The first witness was the defendant, Dr. W. Beckett Martin. Dr. Martin, who had been called as an adverse witness under Rule 43(b) of the Rules of Civil Procedure, testified that on August 17, 1970, Mrs. Hinkle had consulted him about multiple warts on her fingers, arms and ankle. He stated that he explained to her the various treatments for warts and informed her that as a reaction to x-ray treatment, she would suffer a reddening and blistering of the tissue around the wart.

After discussing the possible treatments, Dr. Martin proceeded to administer an x-ray treatment to Mrs. Hinkle's left index finger. That treatment was of 800 R. unit intensity. In administering the treatment, Dr. Martin shielded adjacent healthy flesh, to the extent possible and consistent with the treatment of the warts, with lead shields. Later on August 24, 1970, and on August 31, 1970, Dr. Martin administered additional x-ray treatments.

Mrs. Hinkle's second witness was Dr. Lewis Richmond, a general practitioner in Milton, West Virginia. Dr. Richmond who had examined Mrs. Hinkle, testified that after receiving x-ray treatments Mrs. Hinkle's finger became very tender, swollen, inflamed and painful. Over a period of time the symptoms progressed. He expressed the opinion that the condition was consistent with radiodermatitis. On cross-examination Dr. Richmond testified that x-ray therapy was an accepted form of medical treatment of warts.

Mrs. Hinkle was the third person to testify. She stated that she could not remember what Dr. Martin had told her prior to administering the treatments. After the first treatment she experienced no reaction whatsoever.

The situation was the same after the second treatment. With regard to the third treatment she testified:

"The next treatment he had this lady in there and he told her how long to leave it on and he came in. I said 'I believe this is on too long.' She said, 'No, it's not. I'm keeping the time.' And he came in in a few minutes and he told her that was enough."

Also Mrs. Hinkle testified that during the third treatment Dr. Martin had placed the shield over her hand so that a part of the hand protruded. At the conclusion of her testimony Mrs. Hinkle described in detail the pain, the bleeding, and the general condition of her fingers.

The fourth witness, Dr. Nizam Abraham, a dermatologist, stated that there are occasions when medical practice indicates that certain kinds of warts be treated with x-rays and that such treatment is a proper and accepted procedure. He also testified that Mrs. Hinkle's condition was consistent with radiodermatitis and that the changes which she suffered in the tissue of her fingers could have been caused by radiation therapy. Additionally, Dr. Abraham stated that it was his belief that treatises on dermatology noted that accepted dosage of x-ray treatments ranged as high as 1000 or 2400 R. units.

The three remaining witnesses called by Mrs. Hinkle were Dr. Thomas Scott, Dr. Hassan Vaziri, and Dr. Donald G. Klinesdiver. Dr. Scott examined Mrs. Hinkle in 1970, prior to the treatment by Dr. Martin. She complained that the skin on the tip of her middle and index fingers was thin and painful. He examined her again in 1974 at which time her complaint was the same. Dr. Vaziri, who saw Mrs. Hinkle on May 2, 1974, testified that his examination at that time revealed swelling and discoloration of the left index finger with marked atrophy of the tuft. Because he suspected a glomus tumor Dr. Vaziri recommended amputation of the finger. Amputation was performed on May 28, 1974. Dr. Klinesdiver stated that in examining Mrs. Hinkle after she had seen

the dermatologist and had had x-ray treatment, he noted that her fingers were red, that the skin was denuded, and that the underlying structures were exposed. He characterized Mrs. Hinkle's condition as x-ray burn.

We have held that upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to the plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence. *Jividen v. Legg*, ____ W. Va. ____, 245 S.E.2d 835 (1978); *Howard's Mobile Homes, Inc. v. Patton*, 156 W. Va. 543, 195 S.E. 2d 156 (1973); *Spaur v. Hayes, Admr.*, 147 W. Va. 168, 126 S.E. 2d 187 (1962); *Jenkins v. Chatterton*, 143 W. Va. 250, 100 S.E. 2d 808 (1957); *Fielder v. Service Cab Company*, 122 W. Va. 522, 11 S.E. 2d 115 (1940). If after so treating the evidence, the court finds that it is not sufficient to support a verdict for the plaintiff, the court should, on motion, direct a verdict for the defendant. *Ice v. Doddridge County Court*, 77 W. Va. 152, 87 S.E. 75 (1915); *Pinfold v. Hendricks, supra; Groves v. Groves*, 152 W. Va. 1, 158 S.E. 2d 710 (1968). Stated otherwise, the rule is that when the plaintiff's evidence does not prima facie entitle him to recover, the motion to direct a verdict for the defendant should be sustained. *Williamson & Co. v. Nigh, supra.*

Before analyzing the evidence adduced by Mrs. Hinkle in this case to determine whether it establishes a *prima facie* case, we must consider what must be shown to make a *prima facie* case in a medical malpractice action in West Virginia.

It is axiomatic that to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken. *Atkinson v. Harman*, 151 W. Va. 1025, 158 S.E. 2d 169 (1967); *Morrison v. Roush*, 110 W. Va. 398, 158 S.E. 514 (1931); *Uthermohlen v. Bogg's Run Company*, 50 W. Va. 457, 40 S.E. 410 (1901).

In *Schroeder v. Adkins*, 149 W. Va. 400, 141 S.E. 2d 352 (1965), we stated that as a general rule in a medical malpractice action, the physician's duty to his patient is to exercise such skill and diligence as are ordinarily exercised by average members in good standing of the profession in a similar locality and in the same general line of practice, regard being given to the state of medical science at the time.

For Mrs. Hinkle to have established a *prima facie* case, and to have averted a directed verdict in the case before us, she must have introduced evidence showing that Dr. Martin violated the duty which he owed her. Consequently, it was necessary that she introduce evidence showing that Dr. Martin failed to exercise the reasonable and ordinary skill and diligence exercised by average dermatologists in good standing in a locality similar to Huntington, West Virginia, giving regard to the state of medical science in 1970.

After carefully examining the record in this case, we conclude that Mrs. Hinkle did establish that her fingers were sore, sensitive and painful, as herein described. We do not conclude, however, that she proved a *prima facie* case of negligence against Dr. Martin. According to the testimony of Dr. Martin, x-ray treatment for the removal of warts would precipitate blistering and this was explained to Mrs. Hinkle. There is no contradiction of this testimony. He further testified that post-examination of the area, in September, October, November and December, 1970, revealed that the area gradually improved and that on December 30, 1970, the "nails have regrown, the skin is healed with some residual atrophy and [she] complains of pain and stiffness in the joints. She was referred back to Dr. Tom Scott for treatment for arthritis." Mrs. Hinkle testified that she again consulted Dr. Scott and that he x-rayed her fingers and "told me to go home." Amputation occurred subsequently. Dr. Scott testified that the plaintiff complained of the tenderness of her finger tips in January 1970, previous to any treatment by Dr. Martin. This is the same com-

plaint she had after treatment for the warts and before amputation. Dr. Hassan Vaziri, the orthopedic surgeon who performed the amputation in 1974, testified that plaintiff gave him a history of "pain in the index finger for three weeks."

Drs. Abraham, Richmond and Klinesdiver did testify that the inflamed condition of plaintiff's fingers was consistent with radiodermititis or x-ray burn. Mrs. Hinkle testified that Dr. Richmond recommended and that Dr. Scott did, subsequent to treatment by Dr. Martin, x-ray the fingers with the thought of determining if "it might be burnt to the bone."

However, as we have previously stated, for the plaintiff to recover for negligence in West Virginia, that plaintiff must show that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff, and in the case of a medical malpractice action the plaintiff must show that the defendant was guilty of a want of professional skill or of negligence which resulted in the plaintiff's injuries.

All medical witnesses who testified on the point in this case agreed that x-ray therapy was an accepted method for the treatment of warts. No physician testified that the manner in which Dr. Martin administered Mrs. Hinkle's treatments varied from the accepted norm. Likewise, it is clear that the intensity of those treatments was within accepted parameters. In short, the only inference which can be drawn from the testimony of the physicians in this case is that Dr. Martin administered the treatments in an accepted professional manner.

With two exceptions, this Court has required proof of negligence or a want of professional skill in a medical malpractice case by expert testimony. *Roberts v. Gale,* 149 W. Va. 166, 139 S.E. 2d 272 (1964); *White v. Moore,* 134 W. Va. 806, 62 S.E. 2d 122 (1950). This case does not fall within the two exceptions. *Buskirk v. Bucklew,* 115 W. Va. 424, 176 S.E. 603 (1934); *Howell v. Biggart,* 108 W. Va. 560, 152 S.E. 323 (1930). Additionally, we have

uniformly required the use of expert testimony in cases involving specialized treatment. *Roberts v. Gale, supra; Hundley v. Martinez*, 151 W. Va. 977, 158 S.E. 2d 159 (1967).

Because Mrs. Hinkle failed to introduce evidence showing that Dr. Martin had breached some duty owed her, and because a showing of such a breach is an essential part of a *prima facie* case in a medical malpractice proceeding, we conclude that the trial court properly held that Mrs. Hinkle had failed to make a prima facie case and that the action of the court in directing a verdict was not erroneous.

The judgment of the Circuit Court of Cabell County is affirmed.

*Affirmed.*