Stuart L. SMITH, and Lutheran Medical Center, a Colorado non-profit corporation, Petitioners,

v.

Patricia A. BOYETT and Gary A. Boyett, Respondents.

No. 94SC420.

Supreme Court of Colorado, En Banc.

Dec. 11, 1995.

Hall & Evans, L.L.C., Alan Epstein, Linda C. Comer, Richard A. Hanneman, Denver, for Petitioner Stuart L. Smith.

Douglas E. Best, P.C., Douglas E. Best, Denver, for Petitioner Lutheran Medical Center.

Myers Hoppin Bradley & Devitt, P.C., Frederick J. Myers, Gregg W. Fraser, Denver, for Respondents.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari to clarify the elements of knowing concealment under the

Medical Malpractice Statute of Limitations [1], and to determine whether the plaintiffs' claim in this case should have survived imposition of summary judgment. We affirm the court of appeals, both in its holding that a plaintiff need not confront a doctor with discovered negligence and then be misled by that doctor in order to qualify for the knowing concealment exception to the statute of limitations; and in its determination that the plaintiffs have raised material issues of disputed fact that preclude imposition of summary judgment, and remand with directions.

## I.

We derive the following facts from the parties' pleadings and briefs to the trial court. The facts are presented in the light most favorable to the plaintiffs, as is required at this juncture in the proceedings.

This appeal arises from a medical malpractice action that plaintiffs Patricia Boyett and Gary Boyett filed against Dr. Stuart L. Smith, Dr. Robert Weiss, and Lutheran Medical Center. On December 23, 1985, Dr. Smith operated on Ms. Boyett to remove her gallbladder. During surgery, Dr. Smith probed Ms. Boyett's common duct and perforated it. The perforation allowed bile to leak into Ms. Boyett's abdominal cavity causing extensive damage to her pancreas.

Five X-ray dye studies, called cholangiograms, were performed on Ms. Boyett during surgery. They established that Dr. Smith's probe of the common duct caused the perforation. The first film was used as a baseline to establish anatomy before surgery. The second and third cholangiograms were taken at approximately 6:00 p.m. after the gallbladder had been removed, but before Dr. Smith explored the common duct with a probe. They showed no leakage of dye into the abdominal cavity. The last two cholangio-

grams, taken during the latter portions of the surgery at approximately 7:15 p.m. after the probe of the duct, showed that dye was leaking into the abdominal cavity instead of flowing into the duodenum.[2] One or two days after surgery, the official radiological interpretation of the operating room cholangiograms was typed and placed in Ms. Boyett's hospital chart. The report indicated that there probably was a leak from Ms. Boyett's common duct and that the leak had developed during surgery.

Ms. Boyett was discharged on January 7, 1986, from Lutheran Medical Center. Her condition worsened and she was readmitted to the hospital on January 10, 1986. On January 17, 1986, Dr. Smith met with Ms. Boyett and told her that she had a hole in her common duct caused by a gallstone. On January 18, 1986, Ms. Boyett was transferred to another hospital for ongoing treatments and additional surgery to repair the puncture. Ms. Boyett had no further contact with Dr. Smith after the transfer. Not until January of 1989 did Ms. Boyett learn that the hole in her common duct was caused by the gallbladder surgery.

On December 28, 1990, the Boyetts filed a medical malpractice suit against Dr. Smith.[3] In their complaint, they alleged that Dr. Smith had negligently treated Ms. Boyett's condition, thereby causing her injury. Specifically, the Boyetts alleged that Dr. Smith should have discovered and treated the hole in the common duct during surgery and that he failed to do so.[4] The Boyetts admitted that they were told about the hole in the common duct in January of 1986, but assert that they were unaware that Dr. Smith's failure to diagnose the hole and treat it earlier constituted negligence until February of 1989. In his answer, Dr. Smith denied the allegations and raised the affirmative defense

---

1. § 13–80–105, 6 C.R.S. (1985 Supp.) repealed and reenacted by ch. 114, sec. 1, § 13–80–102, 1986 Colo. Sess. Laws 695, 696.

2. The record indicates that a radiologist may have misread the cholangiograms during surgery and did not immediately inform Dr. Smith that the films showed that a leak had occurred in the common duct.

3. The Boyetts also named Dr. Weiss and Lutheran Medical Center as defendants in their complaint. Claims against these defendants are not at issue in this appeal.

4. The Boyetts did not claim that Dr. Smith's puncture of the common duct during surgery was negligent. Apparently, puncture of the common duct during probing can be caused without negligence.

of the statute of limitations pursuant to section 13–80–105, 6 C.R.S. (1985 Supp.).

■ Dr. Smith filed a motion for summary judgment alleging that the Boyetts' suit was time-barred by section 13–80–105. Section 13–80–105 required all causes of action for medical malpractice to be instituted within three years of the act or omission that gave rise to the suit.[5] *See infra* pp. 511–12. Because the Boyetts did not file suit against Dr. Smith until December 28, 1990, nearly five years after the alleged negligence took place, Dr. Smith argued that their claim was time-barred.

In response, the Boyetts claimed that their suit was not time-barred because Dr. Smith had knowingly concealed his negligent acts from them under section 13–80–105(1)(a).

The trial court granted summary judgment for Dr. Smith. Relying on *Adams v. Richardson*, 714 P.2d 921 (Colo.App.1986), the trial court found that the Boyetts had not satisfied the knowing concealment exception under section 13–80–105 because they were not able to set forth facts from which the jury could conclude that they suspected a wrong had been committed and were subsequently misled or misinformed by the doctor. The Boyetts appealed the trial court's ruling to the Colorado Court of Appeals.

The court of appeals reversed. *Boyett v. Smith*, 888 P.2d 294 (Colo.App.1994). The court of appeals held that the knowing concealment exception does not require that the plaintiff suspect negligence prior to being misled. *Id.* at 296. The court of appeals further held that the Boyetts had sustained their burden of demonstrating a genuine issue of material fact regarding whether Dr. Smith had knowingly concealed his negligence from them. *Id.* Thus, the court of appeals reversed the trial court's dismissal of the Boyetts' case on summary judgment and remanded the case to the trial court for

further proceedings. Dr. Smith petitioned for certiorari.

We granted certiorari to determine:

Whether the court of appeals erred in construing the provisions of § 13–80–105, 6A C.R.S. (1980 Supp.),[6] with respect to the elements required to establish knowing concealment.

Whether the court of appeals erred in concluding that a factual issue remained with respect to the application of the "knowing concealment" exception to the Medical Malpractice Statute of Limitations, § 13–80–105, 6A C.R.S. (1980 Supp.).

We hold that the knowing concealment exception to the Medical Malpractice Statute of Limitations, section 13–80–105, 6 C.R.S. (1985 Supp.), does not require a plaintiff to suspect negligence, confront her physician, and then be misled. In addition, we hold that the Boyetts have plead sufficient facts to raise an issue of material fact as to whether Dr. Smith knowingly concealed his negligence from them. Therefore, we affirm the judgment of the court of appeals.

II.

The pertinent provisions of section 13–80–105, 6 C.R.S. (1985 Supp.), the applicable statute of limitations, provide that:

No person shall be permitted to maintain an action … to recover damages from … any person licensed in this state or any other state to practice medicine … unless such action is instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury. In no event may such action be instituted more than three years after the act or omission which gave rise thereto, subject to the following exceptions:

(a) If the act or omission which gave rise to the cause of action was *knowingly concealed* by the person committing such

---

5. This section has been characterized as a statute of repose since it imposes an absolute bar to bringing suit after a set period of time. *Austin v. Litvak*, 682 P.2d 41, 45 n. 3 (Colo.1984); *see also Black's Law Dictionary* 1411 (6th ed.1990).

6. In our order granting certiorari, we listed the statute of limitations as § 13–80–105, 6A C.R.S. (1980 Supp.). The most recent publication of this statute may be found at § 13–80–105, 6 C.R.S. (1985 Supp.). Therefore, we have referred to the 1985 Supplement throughout this opinion.

act or omission ... then such action may be instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the act or omission;

(Emphasis added.) At issue in this case is the meaning of the phrase "knowingly concealed" for purposes of delineating the exception to the Medical Malpractice Statute of Limitations.

■ In 1977, the General Assembly enacted the statute at issue in this case, section 13–80–105. *See* ch. 198, sec. 1, § 13–80–105, 1977 Colo. Sess. Laws 816–17. The statute included a three year statute of repose with two exceptions. First, the claim was excepted if the physician left an unauthorized foreign object in the claimant's body. Second, the claim was excepted if the person who committed the act or omission knowingly concealed that fact.[7]

■ The knowing concealment exception to section 13–80–105 embodies the common law concept that a wrongdoer should not be able to take advantage of his own wrong. *See Rosane v. Senger,* 112 Colo. 363, 368, 149 P.2d 372, 375 (1944). It prevents a doctor from benefiting from his or her own efforts to hinder the claimant's discovery of the cause of action against the doctor.

■ We have not defined the elements necessary to prove knowing concealment in the context of a medical malpractice claim. However, we have consistently recognized fraudulent concealment as a basis for tolling statutes of limitation. *See First Interstate Bank v. Piper Aircraft Corp.,* 744 P.2d 1197, 1200 (Colo.1987); *Davis v. Bonebrake,* 135 Colo. 506, 515, 313 P.2d 982, 987–88 (1957).[8] We have defined the elements of fraudulent concealment that a plaintiff must prove to toll a statute of limitations as follows:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*First Interstate Bank,* 744 P.2d at 1200; *see also Kopeikin v. Merchants Mortg. & Trust Corp.,* 679 P.2d 599, 601 (Colo.1984); *Morrison v. Goodspeed,* 100 Colo. 470, 477–78, 68 P.2d 458, 462 (1937).

■ Given our prior precedent and authority from other jurisdictions,[9] it is clear

---

7. The knowing concealment exception does not toll the statute of limitations perpetually, rather it extends the statute of limitations until two years after the person bringing the action discovered or in the exercise or reasonable diligence and concern should have discovered the act or omission. § 13–80–105(1)(a). Thus, even if the plaintiffs are able to show knowing concealment, the plaintiffs action may still be barred if the defendant can show that the plaintiffs' discovered or should have discovered the act or omission more than two years before bringing the suit. Whether Ms. Boyett knew or should have known of the alleged negligence prior to 1989 is not an issue presented for review at this time. We accept for purposes of analysis of the motion for summary judgment that she only learned of the act or omission in 1989.

8. The original bill enacting section 13–80–105 utilized the term fraudulent concealment instead of knowing concealment. During floor debate in the Senate, the Senate amended the bill to substitute the term "knowing" for the term "fraudulent." The Senator who introduced this amendment explained that knowing concealment would be easier to understand and to prove than fraud-

ulent concealment. *See* Floor Amendments to S.B. 150 before Senate, 55th Gen. Assembly, 1st Reg. Sess. (hearing tape No. 77–27A, March 18, 1977, at 9:56:14—9:58:00). From this, it is clear that our interpretation of fraudulent concealment provides a useful starting point for defining knowing concealment.

9. *See Bohus v. Beloff,* 950 F.2d 919, 926 (3d Cir.1991) (applying Pennsylvania law) (holding that fraudulent concealment need only consist of some affirmative and independent act of concealment that would prevent the plaintiff from discovering the injury); *Nardone v. Reynolds,* 333 So.2d 25, 39 (Fla.1976) (holding that to establish fraudulent concealment plaintiff must show that doctor made active misrepresentation or failed to disclose known facts regarding condition); *In re Medical Review Panel for Claim of Milton,* 593 So.2d 795, 797 (La.Ct.App.1992) (holding that to establish fraudulent concealment defendant's conduct must constitute a fraud, a deliberate concealment or a breach of duty to disclose); *Benton v. Snyder,* 825 S.W.2d 409 (Tenn.1992) (holding that to prove fraudulent concealment, the plaintiff must show that the defendant doctor

that the main purpose of the knowing concealment exception to the Medical Malpractice Statute of Limitations is to prevent doctors from intentionally concealing facts that would apprise a patient of a claim for relief for negligence. *See generally* 1 David Louisell & Harold Williams, *Medical Malpractice* § 13:03 (1995). With these goals in mind, we hold that in order to prove knowing concealment under section 13–80–105, the Boyetts must prove that (1) Dr. Smith knew he had committed a negligent act or omission, and (2) he intentionally made a material misrepresentation or failed to disclose material information [10] that impeded the Boyetts' discovery of that negligence.

## III.

Dr. Smith argues that in addition to the above elements, the Boyetts must show that they knew of the alleged negligence, confronted him with their suspicions, and he affirmatively misled them. Dr. Smith draws support for this assertion from the court of appeals decision in *Adams v. Richardson*, 714 P.2d 921 (Colo.App.1986), which in turn based its holding on our decision in *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970). We disagree.

In *Owens*, we held that a claim for malpractice accrues when the patient discovers, or in the exercise of reasonable diligence, should have discovered the doctor's negligence. 172 Colo. at 532, 474 P.2d at 607. Fraudulent concealment was not an issue in the case.

In *Adams*, the court of appeals quoted language from *Owens* that outlined one example of how fraudulent concealment might arise. 714 P.2d at 925. However, the pertinent issue in the case was whether the doctor

had an opportunity to conceal his negligence knowingly from the plaintiff and not whether the plaintiff had confronted the doctor with her suspicions of negligence. The evidence indicated that the doctor did not have an opportunity to mislead or conceal anything from the plaintiff. Thus, any statement in *Adams* requiring that the plaintiff actually confront the doctor with her suspicions of negligence was not germane to the court's holding.

■ Moreover, irrespective of any language in *Adams* or *Owens*, the plain language of section 13–80–105 does not require the plaintiff to show that she suspected negligence prior to the doctor's concealment. The statute requires only that a plaintiff set forth facts from which the finder of fact could reasonably conclude that the person committing the act or omission knew of his or her error, and then concealed that knowledge from the plaintiff.

Therefore, we hold that Ms. Boyett need not prove that she approached her conversation with Dr. Smith with knowledge or suspicion. The state of mind at issue is that of Dr. Smith, not Ms. Boyett. Accordingly, we affirm the court of appeals.

## IV.

Dr. Smith further contends that the factual record does not support the Boyetts' allegation that he knowingly concealed his negligence from them. Smith argues that the Boyetts' theory of negligence is: (1) that he failed to realize that he perforated Ms. Boyett's common duct during surgery; and, (2) that he failed to treat the puncture in a timely manner. Smith contends that under the plaintiffs' theory, he could not have

took some affirmative action to conceal the cause of action); *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983) (holding that failure to disclose a negligent act or fact that injury has occurred constitutes fraudulent concealment); *Merrill v. Reville*, 135 Vt. 517, 380 A.2d 96, 99 (1977) (holding that to establish fraudulent concealment plaintiff must show that physician had actual knowledge of the allegedly concealed fact and that he concealed it from plaintiff).

**10.** Some jurisdictions only find fraudulent concealment where the defendant doctor affirma-

tively misrepresented his conduct as opposed to failed to disclose material facts. *See, e.g., Oetting v. Missouri Osteopathic Found.*, 806 S.W.2d 150 (Mo.Ct.App.1991); *Hundley v. Martinez*, 151 W.Va. 977, 158 S.E.2d 159 (1967). In light of our precedent, we adopt the rule that the plaintiff may establish knowing concealment by showing that the defendant either made an affirmative misrepresentation or failed to disclose material information that he had a fiduciary duty to disclose.

*knowingly* concealed his negligence from the Boyetts when his alleged error was in failing to recognize the problem at all. We disagree with Dr. Smith's characterization of the issue.[11]

First, we must be mindful that summary judgment is a drastic remedy and should only be granted upon a clear showing that there is no genuine issue of material fact. C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo.1988). The moving party has the burden of establishing that no triable issue exists and all doubts should be resolved in favor of the non-moving party. *Churchey*, 759 P.2d at 1340. In addition, the non-moving party is entitled to all favorable inferences that may be drawn from the facts. *Kaiser Found. Health Plan v. Sharp*, 741 P.2d 714, 718 (Colo.1987). A reviewing court must apply these same standards when determining whether summary judgment was proper. *Churchey*, 759 P.2d at 1340.

The Boyetts do not assert that the puncture of the common duct during surgery was negligent. Rather, they allege that Dr. Smith should have discovered and treated the puncture during surgery or post-operatively and did not do so. They further allege that Dr. Smith knowingly concealed their claim for relief against him by waiting and later telling Ms. Boyett that a gallstone had caused the hole. They rely upon the operative cholangiograms as evidence from which the jury could find that Dr. Smith knew of the puncture during surgery, or, at the latest, one or two days after surgery when the operative notes were placed in the chart. They also rely upon deposition testimony of two doctors who opine that Ms. Boyett's injury could not reasonably have been attributed to gallstone corrosion, given the symptoms and the time frame, and that Dr. Smith's attribution of the injury to the presence of a gallstone was an affirmative misrepresentation.

In order for the Boyetts to have recourse to the statute of repose, they must establish that Dr. Smith knowingly concealed from Ms. Boyett his earlier failure to diagnose and treat the perforated duct. Hence, the Boyetts must put forward facts from which a jury could reasonably conclude that Dr. Smith negligently failed to diagnose and treat the puncture during and following surgery; that he discovered his omission between December 23 and January 17; and that he knowingly concealed his negligence from Ms. Boyett when he met with her on January 17. We conclude that the evidence plaintiffs are prepared to present satisfies that burden for purposes of surviving a motion for summary judgment.

Rarely will a plaintiff be able to produce direct evidence that a doctor knowingly concealed his negligence. Therefore, in most instances a plaintiff will have to prove knowing concealment through inference and indirect evidence.[12] Such inference and indirect evidence must still support the proposition that the physician knew of his own negligence and concealed it from the plaintiff.

In this case, the radiologist's report in Ms. Boyett's hospital file and the cholangiograms themselves support an inference that Dr. Smith had knowledge of the fact that he caused the hole during surgery.[13] In addition, Dr. Smith's behavior provides further evidence from which a trier of fact could infer knowledge. Dr. Smith's explanation that the puncture was caused by a gallstone is a highly unlikely diagnosis according to the Boyetts' expert witnesses. Viewed in the

---

11. The trial court granted Dr. Smith's summary judgment motion because it found that the Boyetts did not suspect and had not discovered that any wrong had been committed at the time that Dr. Smith informed them of the perforation. The parties did not dispute this fact. The trial court did not make findings regarding whether Dr. Smith knew he caused the injury at the time he told Ms. Boyett that the hole was caused by a gallstone.

12. Requiring a plaintiff to produce direct evidence in the form of an admission by the doctor that he lied would place too onerous a burden on a plaintiff.

13. To come within the knowing concealment requirement, the Boyetts must prove that Smith actually knew he had been negligent. They may prove this through inference and indirect evidence. However, the Boyetts may not satisfy this burden by proving that Dr. Smith should have known he was negligent.

light most favorable to the Boyetts, a trier of fact could infer that (1) Dr. Smith knew that he had caused the perforation during surgery; and (2) he tried to conceal his negligence from the plaintiff by attributing the hole to a fictitious cause. Hence, for purposes of analysis at the stage of a motion for summary judgment, the evidence in the record establishes sufficient facts to support the Boyetts' contention that Dr. Smith knowingly concealed his negligence from them.

Because the Boyetts have raised a genuine issue of material fact regarding the issue of knowing concealment, we affirm the judgment of the court of appeals. We return this case to the court of appeals for remand to the district court to set aside the summary judgment, reinstate the plaintiffs' complaint and for further proceedings consistent with this opinion.

VOLLACK, C.J., dissents.

VOLLACK, Chief Justice, dissenting:

The majority holds that a plaintiff, in order to qualify for the knowing concealment exception to the medical malpractice statute of limitations, must show that: (1) the defendant knew he had committed a negligent act or admission; and (2) the defendant intentionally made a material misrepresentation or failed to disclose material information that impeded the plaintiff's discovery of that negligence. Maj. op. at 512. The majority then holds that, based upon this standard, the respondents in this case have raised material issues of disputed fact that preclude imposition of summary judgment. *Id.* at 514.

I dissent because the respondents have not met their burden to demonstrate the existence of any genuine issue of material fact in this case. The respondents thus have not made the requisite showing to avoid the entry of summary judgment against them.

## I.

On December 23, 1985, petitioner Dr. Stuart Smith operated on respondent Patricia Boyett at Lutheran Medical Center to remove her gall bladder and explore her common bile duct. The respondents allege that Dr. Smith perforated Ms. Boyett's common bile duct during the course of the exploration, allowing bile to leak into her abdominal cavity. After some improvement in her condition, Ms. Boyett was discharged from Lutheran Medical Center on January 7, 1986.

Ms. Boyett was readmitted to the hospital on January 10, 1986, with abdominal pain. On January 16, 1986, diagnostic procedures performed at the hospital indicated that Ms. Boyett had a hole in her common bile duct. On or about January 17, 1985, Dr. Smith met with Ms. Boyett and told her that she had a hole in her common bile duct and that he believed the hole was caused by a gallstone. On January 18, 1985, Dr. Smith transferred Ms. Boyett to University Hospital where she was treated by Dr. Greg Stiegmann and Dr. John Goff. After Ms. Boyett's transfer, Dr. Smith had no further contact with her.

Ms. Boyett was hospitalized at University Hospital until March 21, 1986, when she was discharged. She was subsequently admitted to University Hospital six times between April 1986 and March 1989, and continued under the treatment of Dr. Stiegmann and Dr. Goff until early 1989.

On December 28, 1990, the Boyetts filed the instant action against Dr. Smith. In their complaint, the respondents alleged that Dr. Smith perforated the common bile duct during surgery, that he knew at the time of surgery the common bile duct had been perforated, and that he failed to take any measures to immediately repair or correct the injury to the common bile duct. The lawsuit was filed nearly five years from the time the surgery was performed by Dr. Smith and over four and a half years after Dr. Smith provided any medical care to Ms. Boyett. In his answer, Dr. Smith denied the allegations in the complaint, and raised the affirmative defense that the Boyetts' claim was time barred by section 13–80–105, 6A C.R.S. (1985 Supp.), which requires that medical malpractice actions be filed within three years after the act or omission giving rise to the claim

unless one of the exceptions contained in the statute applies.[1]

On May 1, 1992, Dr. Smith filed a motion for summary judgment alleging that section 13–80–105 precluded the Boyetts' malpractice action. Dr. Smith asserted that the Boyetts' claim was barred because the Boyetts filed their suit nearly five years after the operation giving rise to the alleged negligence took place. The Boyetts contended that section 13–80–105 did not bar their action because Dr. Smith knowingly concealed his negligence from Ms. Boyett when he informed her of his belief that the hole in her common bile duct was caused by a gallstone, and that the exception in section 13–80–105(1)(a), 6A C.R.S. (1985 Supp.), thus applied.

The trial court ordered summary judgment in favor of Dr. Smith. In so holding, the trial court cited *Adams v. Richardson*, 714 P.2d 921 (Colo.App.1986), for the proposition that

> a knowing concealment occurs when a plaintiff suspects or discovers that a wrong has been committed and is subsequently misled or misinformed by the doctor as to what was done or its effect. There must be a negligent act and a subsequent fraudulent concealment.

*Boyett v. Smith,* No. 90CV4859, at 2–3 (July 7, 1992). The trial court went on to hold that there was no evidence of such a knowing concealment and that the Boyetts' claims were thus barred by section 13–80–105.

The court of appeals reversed, holding that the trial court incorrectly added an element not required by the express language of the statute by holding that the plaintiff must suspect or discover that a wrong has been committed before being misled by her doctor. The court of appeals then stated:

> We, therefore, conclude that the fact finder here must determine whether, at the time Smith explained the cause of the

bile duct perforation to Boyett, he knew that his surgery had caused it and that appropriate steps should have been taken promptly after the surgery to treat the condition.

*Boyett v. Smith,* 888 P.2d 294, 297 (Colo.App. 1994). The court of appeals went on to hold that, under this standard, the Boyetts had sustained their burden on summary judgment of demonstrating a genuine issue of material fact, thereby precluding dismissal of their claim as time barred. *Id.* Dr. Smith then petitioned for certiorari review which this court granted.

## II.

The majority states the elements of knowing concealment as follows:

> [I]n order to prove knowing concealment under section 13–80–105, the Boyetts must prove that (1) Dr. Smith knew he had committed a negligent act or omission, and (2) he intentionally made a material misrepresentation or failed to disclose material information that impeded the Boyett's discovery of that negligence.

Maj. op. at 513 (footnote omitted). I agree with the majority's formulation of this standard. I disagree with the majority's finding that the Boyetts made the requisite showing to avoid summary judgment before the trial court.

Summary judgment is only appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Peterson v. Halsted,* 829 P.2d 373, 375 (Colo.1992). Once the movant shows that genuine issues are absent, the burden shifts, and unless the non-movant shows that a true factual controversy exists, summary judgment is appropriate. *Ginter v. Palmer & Co.,* 196 Colo. 203, 206, 585 P.2d

---

1. Section 13–80–105, 6A C.R.S. (1985 Supp.), states in pertinent part:

   (1) No person shall be permitted to maintain any action ... to recover damages from ... any person licensed in this state or any other state to practice medicine ... unless such action is instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury. In no event may such action be instituted more than three years after the act or omission which gave rise thereto, subject to the following exceptions:

   (a) If the act or omission which gave rise to the cause of action was knowingly concealed by the person committing such act or omission ... then such action may be instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the act or omission....

583, 585 (1978). To avoid summary judgment, the non-movant must set forth facts indicating that a controversy exists; a litigant may not avoid summary judgment by merely asserting a legal conclusion without evidence to support it. *Fritz v. Regents of the Univ. of Colo.,* 196 Colo. 335, 339–40, 586 P.2d 23, 26 (1978); *see also Hoary v. Lowe,* 734 P.2d 154, 155 (Colo.App.1987) (holding that once the defendant invoked section 13–80–105 as a defense, the burden shifted to the plaintiff to come forward with facts, *rather than conclusory allegations,* sufficient to invoke the knowing concealment exception).

In this case, Dr. Smith motioned the trial court for summary judgment, asserting that the Boyett's claim was time barred by section 13–80–105. Dr. Smith included affidavits with his motion which contained factual support for his assertion that the Boyetts' claim was precluded by section 13–80–105. The burden then shifted to the Boyetts to demonstrate by relevant and specific facts that Dr. Smith knew he had committed a negligent act or omission, and that he intentionally made a material misrepresentation or failed to disclose material information that impeded the Boyetts' discovery of that negligence. *See Hoary,* 734 P.2d at 155.

The Boyetts asserted, in their response to Dr. Smith's motion for summary judgment and in their brief in support of their motion for amendment of findings, that Dr. Smith knowingly concealed the fact that he caused the hole in Ms. Boyett's common bile duct during surgery when he told Ms. Boyett on or about January 17, 1986, that the hole in her common bile duct had been caused by a gallstone. Dr. Smith insisted, in his reply brief on summary judgment, that he had no knowledge on January 17, 1986, that he had caused the hole in Ms. Boyett's common bile

duct, and thus could not have been knowingly concealing information from her.

Had the Boyetts presented facts in the documents accompanying their brief opposing summary judgment supporting an inference that Dr. Smith had knowledge when he met with Ms. Boyett on or about January 17 that he caused the hole in her common bile duct, this would indeed constitute a disputed material fact sufficient to avoid summary judgment. The Boyetts, however, have only made the type of bald assertion of fact on this point that our cases teach is insufficient to avoid summary judgment. *See Fritz,* 196 Colo. at 339–40, 586 P.2d at 26; *Hoary,* 734 P.2d at 155.

In the affidavits and other affirmative material accompanying the Boyetts' brief opposing summary judgment, the Boyetts have only presented evidence of negligence, rather than of the *knowing* concealment required by the statute. The majority, in determining that the Boyetts made a sufficient evidentiary showing to avoid summary judgment here, points to: (1) evidence presented by the Boyetts of tests done during the initial operation that indicate that "Dr. Smith *should have known* of the puncture" during or soon after surgery; and (2) deposition testimony by two doctors who stated their opinion that it was *unreasonable* of Dr. Smith to attribute the hole in Ms. Boyett's common bile duct to gallstone corrosion. Maj. op. at 513–14.

This evidence indicates that, at most, Dr. Smith was negligent when he informed Ms. Boyett that her injury was caused by a gallstone. Mere evidence of negligence, even when cumulative, is insufficient to draw the inference of knowledge required by the statute.[2] Furthermore, the Boyetts' bald assertion that Dr. Smith was consciously misleading Ms. Boyett when he told her that her injury was caused by a gallstone is inade-

---

**2.** To hold otherwise would contravene the plain language of § 13–80–105(1)(a) by allowing a plaintiff to avail herself of the knowing concealment exception in that statute without making the factual showing of knowledge required at the summary judgment stage. In order to make the evidentiary showing necessary to survive Dr. Smith's motion for summary judgment, the Boyetts were required to submit factual evidence that Dr. Smith *knew* that the information he imparted to Ms. Boyett on January 17 was incor-

rect. The Boyetts did not do so. They merely submitted evidence that Dr. Smith was negligent for not knowing the information was incorrect. To allow the Boyetts to survive summary judgment on a factual showing of negligence, rather than knowing concealment, directly contradicts the clear mandate of § 13–80–105(1)(a). *See Dodge v. Montrose Potato Growers Coop. Ass'n,* 34 Colo.App. 223, 227, 524 P.2d 1394, 1396 (1974) (holding that exceptions to statutes of limitations are to be strictly construed).

quate to avoid summary judgment without supporting factual evidence. I would thus reverse the court of appeals and hold that the trial judge, although applying the incorrect standard for knowing concealment, correctly ordered summary judgment in favor of Dr. Smith.[3]

---

**3.** The majority makes much of the fact that the trial court relied on *Adams* to hold that a plaintiff must suspect or discover that a wrong has been committed in order to avail herself of the knowing concealment exception to § 13–80–105. *Adams* holds, however, and the majority concedes, that a negligent act and a knowing concealment are required. Maj. op. at 512; *Adams*, 714 P.2d at 925. The Boyetts' failure, therefore, to allege facts to support their assertion of a knowing concealment on the part of Dr. Smith is fatal to their claim.