**Carolynne M. SMITH, Plaintiff–Appellant,**

v.

**BOARD OF EDUCATION OF SCHOOL DISTRICT FREMONT RE–1, a/k/a Canon City RE–1 School District, in its official capacity; and Frank Cooper, Ron Minty, and Jack Brown, in their individual capacities, Defendants–Appellees.**

No. 02CA0552.

Colorado Court of Appeals, Div. II.

July 17, 2003.

Certiorari Denied Feb. 9, 2004.

Charles F. Kaiser, Martha R. Houser, Gregory J. Lawler, Cathy L. Cooper, Sharyn E. Dreyer, Denver, Colorado, for Plaintiff–Appellant.

Law Firm of Fowler, Schimberg & Flanagan, P.C., Catherine A. Tallerico, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge NEY.

Plaintiff, Carolynne M. Smith, appeals the judgments in favor of defendants, Board of Education of Fremont RE–1 School District, Frank Cooper, Ron Minty, and Jack Brown, on plaintiff's claims related to her employment at the Canyon City High School. We affirm in part, reverse in part, and remand for a new trial.

Plaintiff was a classified clerical worker at Canyon City High School. She asserts that her male supervisor repeatedly pinched her under her arms, hovered over her, and made derogatory gestures and remarks. Plaintiff complained of these actions to two higher level supervisors. She also complained that her job duties did not match her job description and salary, and she requested a reclassification. After her complaints, her supervisor began giving negative evaluations of her work, which plaintiff contends were in retaliation for the complaints she made against him. She continued to receive negative evaluations, was not reclassified, and eventually filed a formal grievance, which proceeded through four levels of review.

During this time, plaintiff also became an active recruiter and organizer for a new union for classified employees of the school district, which, according to defendants, the school district had not yet recognized. She requested that her union representative, who was also an agent for the teachers' union, be allowed to accompany her to the meetings associated with her grievance. This request was denied. Plaintiff was eventually terminated.

Plaintiff asserted claims of sexual harassment and retaliation under Title VII; claims under 42 U.S.C. § 1983 for violation of her freedom to associate with a union; and claims for violations of due process, breach of contract, and outrageous conduct and intentional infliction of emotional distress. The trial court granted summary judgment for defendants on all claims except the freedom of association and outrageous conduct claims, which were tried to a jury. The court granted a directed verdict for one defendant on the association claims, and the jury returned verdicts on the remaining claims in favor of defendants. This appeal followed.

## I. Title VII Retaliation

Plaintiff first contends that the court erred in granting summary judgment in favor of defendants on her claim of retaliation for making a sexual harassment complaint. We agree.

■ We review a summary judgment ruling de novo. *Smith v. Boyett*, 908 P.2d 508 (Colo.1995). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). The moving party has the burden of establishing that no triable issue exists. The nonmoving party is entitled to all favorable inferences that may be drawn from the facts, and all doubt should be resolved in favor of the nonmoving party. *Smith v. Boyett, supra.*

Plaintiff filed Title VII claims based on hostile environment, sexual harassment, quid

pro quo, and retaliation. *See* 42 U.S.C. § 2000e, et seq. (2003). The court granted summary judgment in favor of defendants on the first two claims, finding that the actions complained of were not sexual, but rather were "gender neutral antics." Plaintiff does not contest this ruling.

The court then dismissed the retaliation claim, concluding:

> While there may be a factual dispute as to whether the termination was based upon adverse evaluations or her complaints of sexual harassment, there is no longer a dispute, as a matter of law as to whether the harassment was sexual as covered by Title VII. The causal connection issue is therefore moot and the retaliation claim must fail.

■ Title VII provides, inter alia, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter...." 42 U.S.C. § 2000e–3(a). The elements of a prima facie case of retaliation are: (1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's action. *Love v. RE/MAX of Am., Inc.,* 738 F.2d 383 (10th Cir.1984).

■ The first prong of a retaliation claim is met if the plaintiff shows that she had a good faith belief that she was engaging in protected activity. *See Love v. RE/MAX of Am., Inc., supra* (opposition activity is protected when it is based on a mistaken, but good faith belief that Title VII has been violated).

■ Defendants argue that plaintiff's complaints to her superiors were not "protected opposition to Title VII discrimination" because her supervisor's repeatedly pinching her was gender neutral behavior. Plaintiff contends that she had a good faith belief that this behavior was sexual because "pinching" was listed as an example of "sexual harass-

ment" in the employee manual. We agree with plaintiff.

Here, plaintiff provided evidence that the employee manual designated "pinching" as one type of sexual harassment and that, although the pinching ceased after it was designated as sexual harassment in the manual, she continued to complain of it after the designation. She also submitted an affidavit describing why she believed the behavior was sexual and stating that she believed the supervisor had only pinched women. Thus, whether plaintiff had such a good faith belief is a disputed issue of material fact.

As to the second prong, plaintiff has presented evidence that her superiors took adverse actions against her shortly after she complained about her supervisor's actions. Thus, whether there was "adverse action by the employer subsequent to or contemporaneous with such employee activity" is also a disputed issue of material fact.

Last, the existence of "a causal connection between such activity and the employer's action" is a disputed issue of material fact.

The trial court held that because the complaint arose from gender neutral behavior, causality could not be shown. To the extent the court held that plaintiff could not maintain a retaliation claim if her underlying claims for sexual harassment failed, the order was in error. *See Love v. RE/MAX of Am., Inc., supra* (retaliation claim does not require that the plaintiff prevail on the underlying claim of discrimination; rather, the plaintiff must have a good faith belief that the employer's actions are illegal).

However, defendants contend that the complaint itself was for gender neutral behavior. Defendants contend that plaintiff cannot show a causal relationship between the employer's actions and her protected behavior because her complaints could not reasonably be construed by her superiors as being for sexual harassment rather than gender neutral behavior.

■ We hold that to meet the third prong of a prima facie retaliation case, plaintiff is required to show that defendants reasonably could have construed her complaint as protected opposition to sexual harassment, and

here, she provided enough evidence on that issue to survive a motion for summary judgment.

■ If an employee's complaint to the employer fails to include allegations that could reasonably be construed as directed at a prohibited act, the complaint is not "protected opposition" under the first prong of a retaliation claim. *See, e.g., Smith v. Bd. of County Comm'rs*, 96 F.Supp.2d 1177 (D.Kan. 2000).

■ Further, even when an employee makes a good faith complaint of sexual harassment, if the employer could not reasonably view the complaint as one for sexual harassment, any action taken against the employee as a result of the complaint could not be retaliation for protected opposition. Under those circumstances, the employer would only be retaliating against an unprotected complaint. *See Robbins v. Jefferson County Sch. Dist. R–1*, 186 F.3d 1253 (10th Cir.1999)(plaintiff failed to provide evidence that her complaint concerned discrimination; informal complaints are sufficient) *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Gallagher v. Kleinwort Benson Gov't Sec. Inc.*, 698 F.Supp. 1401 (N.D.Ill.1988)(summary judgment for defendant upheld where plaintiff did not provide evidence that she expressed opposition to any unlawful practice); *cf. Williams v. Rice*, 983 F.2d 177 (10th Cir.1993)(causal connection cannot be shown where person who acts adversely against plaintiff is unaware of complaint); *Gifford v. Atchison, Topeka & Santa Fe Ry.*, 685 F.2d 1149, 1157 (9th Cir.1982)(employee need not be aware that the practice is unlawful under Title VII at the time of the opposition for opposition to be protected).

However, here, plaintiff provided evidence that she initially complained of her supervisor's pinching her, that the school district subsequently designated "pinching" as a form of sexual harassment, and that in her grievance, she alleged that her supervisor "verbally and physically harassed her." Viewing the evidence in the light most favorable to plaintiff, we find that whether her complaints could cause a reasonable person to believe she was engaging in protected opposition was a disputed issue of material fact to be resolved by the jury, and summary judgment was improper.

## II. Breach of Contract and Due Process

Plaintiff contends that the court erred in granting summary judgment in favor of defendants on her breach of contract and due process claims. We agree as to the contract claim.

Specifically, plaintiff asserts that the employer's policies and handbooks created an implied contract, that this contract required certain procedures to be implemented before termination, and that because these procedures were not implemented, she was denied due process and her implied employment contract was breached. She asserts she was not given an opportunity to respond to complaints made against her prior to her termination, she was disciplined and terminated without just cause, and the progressive discipline required by the employer's policies was not implemented.

Defendants argue that plaintiff did not present sufficient evidence that a contract existed between the parties and that, assuming a contract did exist, the process accorded plaintiff, which included evaluations, a growth plan, and a four-level grievance procedure, gave her all the process she was due.

### A. Contract

■ First, we agree with plaintiff that the entry of summary judgment was improper on the breach of contract claim.

■ When a school board limits its power to discharge personnel by promulgating and issuing a handbook, an employee may rely on the provisions in the handbook to state a claim for relief for breach of implied contract. *Adams County Sch. Dist. No. 50 v. Dickey*, 791 P.2d 688 (Colo.1990). Whether an employee relied on the handbook provisions creating an implied contract is normally a factual inquiry for the jury, and summary judgment would not be proper on this basis alone. *See Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825 (Colo.App.1990).

Here, by complaining to her superiors during the grievance process that they were not following the policies of the school district, plaintiff presented evidence that she relied on the handbook. Thus, a disputed issue of material fact exists as to whether there was an implied contract.

Moreover, assuming a contract existed between the parties, plaintiff presented evidence that created a disputed issue of material fact as to whether the contract was breached.

Plaintiff failed to specify any provisions within the standard operating procedures or employee handbook that require an additional pre- or post-termination hearing or require any different or additional progressive discipline other than that which she received. However, plaintiff specified portions of the standard operating procedures that described "Just and Proper Cause for Disciplining an Employee" and that outlined, in detail and with examples, the method for determining the proper level of discipline and "guidelines or criteria that are to be applied to the facts of any one case." These portions could reasonably be read to require that termination be only for just cause. Plaintiff also presented evidence that she was told that the negative evaluations were a pretext for dismissing her based on her complaints against her supervisor.

Thus, a disputed issue of fact remains as to whether she was dismissed for just cause, and summary judgment was not warranted on this claim.

### B. Due Process

 However, summary judgment was proper on plaintiff's due process claim.

[14, 15] If the school board properly creates rules or mutually explicit understandings, which form the basis of a binding agreement, those rules or understandings may create a property interest in continued employment entitling the employee to the protections of the procedural due process guarantee of the United States Constitution. *Adams County Sch. Dist. No. 50 v. Dickey, supra.* Once a protected interest is implicated, due process requires that the public em-

ployee receive notice of the charges and an opportunity to respond prior to termination. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)(essential requirements of due process are notice, opportunity to respond, and opportunity to present reasons, either in person or in writing, why action should not be taken; full evidentiary hearing not necessarily required); *Ellis v. City of Lakewood,* 789 P.2d 449 (Colo.App.1989).

Here, even assuming a contract exists, assuming that the employee handbook and standard operating procedures entitle plaintiff to due process, and viewing the evidence in the light most favorable to plaintiff, we conclude that plaintiff has not provided evidence that the school district failed to accord her due process.

Contrary to her argument, plaintiff was given an opportunity to respond to her negative evaluations and was accorded proper progressive discipline before termination. Plaintiff grieved her pretermination employment evaluations, and during this grievance process she was given an opportunity to respond to the negative evaluations, both in person and in writing.

Moreover, plaintiff has not identified any specific provisions that grant her any additional process or that require a full evidentiary hearing prior to termination.

Therefore, we conclude summary judgment on her claim for violation of due process was properly granted.

### III. Freedom of Association

As to her freedom of association claims, plaintiff contends that the trial court erred in admitting certain evidence, instructing the jury, and granting a directed verdict for one of the defendants. We agree that the judgments on these claims must be reversed.

### A. Evidence

 Plaintiff contends that the trial court erred in admitting portions of the Collective Bargaining Agreement between the teachers' union and the school district. We disagree.

Plaintiff filed a claim under 42 U.S.C. § 1983 (2003), arguing that defendants retaliated against her for exercising her First Amendment right to freedom of association with a union. Part of her claim is based upon defendants' refusal to allow an agent of her union to represent her during the grievance process. Defendants responded that they refused to allow the representation not in retaliation, but because they relied on Article 1–3 of the Collective Bargaining Agreement, which provided that a teachers' union member or agent would not represent classified employees in grievances.

Plaintiff contends that Article 1–3 was invalid and therefore should not have been admitted at trial. However, regardless of its validity, the evidence was admissible because it showed a motive other than retaliation for defendants' actions.

 A trial court has considerable discretion in ruling upon the admissibility of evidence, and we will find an abuse of discretion only if its ruling is manifestly arbitrary, unreasonable, or unfair. *Wark v. McClellan*, 68 P.3d 574 (Colo.App.2003). Generally, evidence that logically tends to prove or disprove a fact in issue or that sheds light upon a contested matter is relevant. A trial court has considerable discretion in determining whether evidence has logical relevance. *Wark v. McClellan, supra.*

Here, the court determined, out of the presence of the jury, that the contract was valid and then admitted it. We perceive no abuse of discretion. The jury had to determine whether defendants, in deciding not to allow the representative to accompany plaintiff, were motivated by retaliation or by some other factor. The existence of a contract or any other evidence explaining the motives was relevant to this issue, irrespective of the contract's validity.

We also note that the court did not instruct the jury that the provision was binding, and, contrary to plaintiff's contention, no witness heard arguments regarding its validity.

## B. Instruction

 Plaintiff next contends that the court committed reversible error by submitting an instruction related to her freedom of association claim. We agree.

The instruction, given over plaintiff's objection, stated:

Under the law, you are not to second guess the business decisions made by employers. It is the perception of the decision-makers, here [the defendants], which is relevant as to whether [plaintiff] met the expectations of the School District. The Defendants are entitled to make their business decisions based on whatever lawful grounds they find appropriate as long as [plaintiff's] participation in a union was not a determining factor in the business decision.

You are not to determine whether a business decision was good or bad, prudent or imprudent. An employer's business judgment is relevant only as it relates to whether the employer's true motivation was retaliation against [plaintiff] for participating in a union.

It is not unlawful for an employer to refuse to recognize or negotiate with a particular employee union. Such a decision does not violate the First Amendment.

In the trial court, plaintiff stated that the instruction was "an inaccurate statement of the First Amendment" and that "the law says that union activity has to be a substantial or motivating factor." We find this objection sufficient to preserve the issue for appeal.

We agree with plaintiff that the instruction misstates the law by giving the standard for proving an association claim as whether plaintiff's union activity was a "determining" factor, rather than a "substantial or motivating" factor. *See Hadley v. Moffat County Sch. Dist. RE–1*, 681 P.2d 938 (Colo.1984)(to prove retaliation for union association, plaintiff must show that her constitutionally protected conduct was a substantial or motivating factor in defendant's adverse action).

 Although a separate instruction specifically outlining the elements of the association claim stated the correct standard, "when various instructions are in direct conflict and

one of the instructions is an incorrect and clearly prejudicial statement of the law, the fact that other instructions contain a correct statement of the law cannot cure the error." *People v. Herbison,* 761 P.2d 263, 264 (Colo. App.1988).

Under these circumstances, we find that the erroneous instruction could have misled the jury into applying an incorrect standard, and thus, we conclude it was reversible error. *See People v. Herbison, supra.*

However, we reject plaintiff's interpretation of the instruction as stating that the reasonableness of defendants' decisions could not be considered by the jury for any reason. The instruction correctly states that a defendant's business judgment is only relevant "as it relates to whether the employer's true motivation was retaliation ... for participating in a union." *See Sanchez v. Philip Morris Inc.,* 992 F.2d 244 (10th Cir.1993)(if plaintiff successfully proves that the defendant's reasons are not worthy of credence, the plaintiff must still prove that the true motive of the employment decision violates Title VII); *Lucas v. Dover Corp.,* 857 F.2d 1397 (10th Cir.1988)(court will not second-guess business decisions made by employers in the absence of some evidence of impermissible motives).

We also disagree with plaintiff that the instruction was otherwise prejudicial and cumulative.

■ The decision to provide a jury with a supplemental or clarifying instruction that properly states the law is within the trial court's discretion and will not be disturbed absent an abuse of discretion. *See People v. Bielecki,* 964 P.2d 598 (Colo.App.1998).

Here, we perceive no abuse of discretion. The instruction properly stated the law regarding business judgment, and the combination of similar principles did not render the instruction cumulative.

### C. Directed Verdict

■ One of plaintiff's 42 U.S.C. § 1983 association claims asserted that the school superintendent retaliated against her for her union association. After plaintiff presented her case-in-chief, the trial court directed a verdict in favor of that defendant. Plaintiff contends that this decision was in error. We agree.

■ A court considering a motion for directed verdict must view the evidence and all reasonable inferences arising from it in the light most favorable to the nonmovant. If the evidence, when viewed in this light, cannot support a verdict in favor of the nonmoving party, the issue should not be submitted to a jury, and a directed verdict should be entered. *Huntoon v. TCI Cablevision of Colo., Inc.,* 969 P.2d 681 (Colo.1998).

In her case-in-chief, plaintiff presented evidence that the superintendent was not interested in bargaining with a new union, that he was the decision maker for her level-three grievance, and that her supervisor told her that the superintendent told him to document her poor performance in support of termination. Plaintiff also testified that during her level-three grievance conference with the superintendent, he stated, "I don't wish for you to take this as a threat. However, sometimes when you don't accept what is offered you, you lose everything."

Viewed in the light most favorable to plaintiff, this evidence supports the conclusion that the superintendent had some anti-union animus, that he threatened plaintiff with adverse consequences should she take the grievance process to the next level, and that he had some role in the decision to document her performance with the intent to terminate her.

A reasonable jury could have concluded that the superintendent's anti-union animus was a "substantial or motivating factor" in the adverse action. *See Hadley v. Moffat County Sch. Dist. RE–1, supra.*

Hence, because plaintiff presented some evidence of retaliation for union association, the court erred in granting a directed verdict for the superintendent on this claim.

### IV. Outrageous Conduct

■ Plaintiff contends that the court gave an erroneous instruction to the jury on her outrageous conduct claim against her supervisor. We disagree.

The form of the instructions given at trial is within the discretion of the trial court. All the court's instructions to the jury are to be read and considered as a whole in determining whether all the necessary law has been correctly stated. *Armentrout v. FMC Corp.,* 842 P.2d 175 (Colo.1992).

The elements of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff to suffer severe emotional distress. *Tracz v. Charter Centennial Peaks Behavioral Health Sys., Inc.,* 9 P.3d 1168 (Colo.App.2000).

The court instructed the jury on these elements, but, because the supervisor was subject to qualified immunity, the court included a fourth element—that his conduct was willful and wanton. Plaintiff argues that inclusion of this element in the instruction improperly shifted the burden of proof on the qualified immunity issue to her. We disagree.

Under the Colorado Governmental Immunity Act, public employees such as the supervisor are entitled to immunity unless their conduct is willful and wanton. *See* § 24–10–118(2)(a), C.R.S.2002; *Mattson v. Harrison,* 929 P.2d 41 (Colo.App.1996)(public employee granted immunity for acts or omissions occurring during performance of employee's duties, unless employee's act or omission was willful and wanton).

While a defendant has the burden of proving the affirmative defense of governmental immunity, to overcome the immunity the plaintiff must prove that the defendant's action was willful and wanton. *Duong v. County of Arapahoe,* 837 P.2d 226 (Colo.App.1992)(dismissal of tort claims on basis of sovereign immunity proper because plaintiffs presented no evidence of willful and wanton conduct).

Plaintiff does not dispute that the supervisor enjoys qualified immunity. Thus, the only remaining determination for the jury was whether plaintiff showed that he acted willfully and wantonly. *See Duong v. County of Arapahoe, supra.* The instruction only addressed this latter requirement and properly placed on plaintiff the burden of overcoming the affirmative defense.

The judgments on plaintiff's claims for Title VII retaliation, breach of contract, and § 1983 retaliation for union association are reversed, and the case is remanded for a new trial on those claims in accordance with this opinion. In all other respects, the judgments are affirmed.

Judge CASEBOLT and Judge WEBB concur.